OPINION OF THE COURT
Graffeo, J.
In this petition to modify a Family Court third-party visitation order, the grandparents appeal from an Appellate Division order granting the parents’ request to terminate visitation based on a change in circumstances since issuance of the initial order. Because we agree with the Appellate Division that terminating visitation is in the child’s best interest, we affirm.
Petitioners Carol and Steven Wilson are the parents of two daughters. Respondents Linda and Brian McGlinchey (grandparents) are Carol Wilson’s parents and have been estranged from *378 their daughter since 1997, prior to the daughter’s marriage. In October 1999, the grandparents filed a petition pursuant to Domestic Relations Law § 72 seeking visitation with their four-month-old granddaughter. The Wilsons opposed the petition. Before a hearing was held, however, the parties reached an agreement and their written stipulation was incorporated into a Family Court order entered on June 22, 2000. Under the terms of the stipulation, the Wilsons agreed that the grandparents would have eight hours of visitation with the child every month, and the parties further consented to begin therapeutic family counseling by March 1, 2001. It is undisputed that this family counseling never occurred.
After several months of visitation, the Wilsons commenced this proceeding in Family Court to terminate the visitation between the grandparents and their daughter. The petition alleged that a change in circumstances had occurred since the entry of the Family Court order. Specifically, the Wilsons claimed that the visits were an “unmitigated disaster,” citing one incident where Carol Wilson summoned the police for aid in removing the grandparents from her home at the end of a visit with her daughter. In addition, the Wilsons asserted that the situation had worsened over time and that the grandparents employed threats of further court action to “bully” them into acceding to the grandparents’ demands. Finally, the Wilsons stated their belief that the best interest of their child would be served only by discontinuing visitation and vacating the order.
The grandparents opposed the petition and cross-petitioned for their visitation sessions to include the Wilsons’ younger daughter, born after the parties’ stipulation. They countered that the Wilsons had impeded the agreement by restricting the days, times and locations of their visits and interrupting their interactions with their granddaughter during visits in the Wilsons’ home. The grandparents also claimed that the Wilsons mischaracterized normal toddler behavior, such as crying, as evidence of the child’s discomfort during visitation.
Family Court conducted a three-day hearing that resulted in the dismissal of the Wilsons’ petition and denial of the grandparents’ cross petition. After receiving testimony from the parties and the therapists called by each side, as well as considering the submission from the Law Guardian appointed to represent the children, the court concluded that the Wilsons failed to demonstrate a change in circumstances warranting termination of visitation between the grandparents and the *379 older child but found that the younger child’s best interest would not be served by visitation with the grandparents. The court observed that “the level of animosity between the parties, coupled with the obvious and extreme dysfunction in this family, mitigates against [such] an award of visitation” (Matter of McGlinchey v Wilson, Fam Ct, Rensselaer County, Oct. 26, 2001, Hummel, J., UCMS Docket No. V-00178-01, slip op, at 10).[1] The parents appealed from that part of the order dismissing their petition to terminate visitation as to the older child.[2]
The Appellate Division modified, on the law and the facts, by granting the Wilsons’ petition, and vacated the Family Court visitation order. Relying on testimonial and other evidence from the hearing, the Court found that the child and her mother and grandmother all suffered from emotional distress as a consequence of the increasing tension and hostility between the parties surrounding the visits. Moreover, the Court viewed the parties as “incapable of preventing their feelings toward one another from infecting any visitation” and reasoned that, in light of the parents’ and grandparents’ use of the child as a “pawn” in their battle, the child would likely be harmed by continuing “to force visitation with [the grandparents] against her parents’ wishes” (305 AD2d 879, 881 [3d Dept 2003]). The Court concluded that the Wilsons had demonstrated a change in circumstances reflecting that the visitation was no longer in the child’s best interest.
On appeal to this Court, the grandparents dispute the factual findings and legal analysis of the Appellate Division and contend that the parents failed to meet their burden of proof establishing a change in circumstances that warranted modification of the existing visitation order. Thus, they urge that consideration of the older child’s best interest was inappropriate in this situation and that visitation should be maintained. We disagree.
In its decision in Troxel v Granville (530 US 57 [2000]), a plurality of the United States Supreme Court recognized “that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning *380 the care, custody, and control of their children” (id. at 66; see Matter of Ronald FF. v Cindy GG., 70 NY2d 141 [1987]). Troxel involved an as-applied constitutional challenge to Washington State’s third-party visitation statute. The plurality stressed the deference that a state must give to the child-rearing decisions of fit parents:
“[i]n an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent’s decision [restricting visitation] becomes subject to judicial review, the court must accord at least some special weight to the parent’s own determination” (530 US at 70).
In New York, Domestic Relations Law § 72 acknowledges the value to children of grandparent relationships but does not create “an absolute or automatic right of visitation” (Lo Presti v Lo Prestí, 40 NY2d 522, 526 [1976]). Instead, the statute provides a procedural mechanism for grandparents to acquire standing to seek visitation with a minor grandchild in two specific instances—where one or both parents of the child have died or “where circumstances show that conditions exist which equity would see fit to intervene” (Domestic Relations Law § 72 [1]; see Lo Presti, 40 NY2d at 526). When grandparents petition for visitation under section 72, the court undertakes a two-part inquiry: “[f]irst, it must find standing based on death or equitable circumstances which permit the court to entertain the petition. If it concludes that the grandparents have established the right to be heard, then it must determine if visitation is in the best interest of the grandchild” (Matter of Emanuel S. v Joseph E., 78 NY2d 178, 181 [1991]). Standing, therefore, does not ensure that visitation will be granted—the court also has to find that such visitation is in the best interest of the child.
Once a visitation order is entered, it may be modified only “upon a showing that there has been a subsequent change of circumstances and modification is required” (Family Ct Act *381 § 467 Ob] [ii]).[3] Extraordinary circumstances are not a prerequisite to obtaining a modification; rather, the “standard ultimately to be applied remains the best interests of the child when all of the applicable factors are considered” (Friederwitzer v Friederwitzer, 55 NY2d 89, 95 [1982]; see Matter of Krom v Comerford, 57 NY2d 704, 705 [1982]). Relevant considerations include whether the alleged change implicates the “fitness” of one of the parties (see Aberbach v Aberbach, 33 NY2d 592, 593 [1973]), the nature and quality of the relationships between the child and the parties (see Matter of Emanuel S., 78 NY2d at 182; Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]) and the existence of a prior agreement (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Friederwitzer, 55 NY2d at 94-95).
On the critical factual dispute in the case—whether a change in circumstances warranting modification occurred—Family Court relied heavily on the preexisting estrangement and stipulated order to find no such change. In contrast, the Appellate Division found that the exacerbated levels of animosity and stress and the associated negative impact on the child and her mother represented a change necessitating termination of visitation. Where courts below reach different factual conclusions, we review the record to determine which findings more closely comport with the weight of the evidence (see CPLR 5501 [b]; Matter of Jaclyn P., 86 NY2d 875, 878 [1995]; Matter of Hime Y., 54 NY2d 282, 286 [1981]).
Considering all of the pertinent factors and after review of the entire record, we conclude that the Appellate Division properly terminated visitation between the grandparents and the older child. In this case, the initial visitation order resulted from the Wilsons’ assent to the grandparents’ demand and not from a full hearing assessing either the standing issue or the best interest of the child under the circumstances (see Matter of Emanuel S., 78 NY2d at 181). The evidence reveals that, after the commencement of visitation, the already-strained relationship between the parents and grandparents further deteriorated. The hostility intensified between the two camps and culminated in the March 2001 episode—the impetus for this modification petition—when Carol Wilson called the police in order to get her parents to leave the house after a visitation. Of *382 course, animus between litigants is not uncommon, particularly in emotionally-charged, family matters (see Lo Presti, 40 NY2d at 526). Although enmity between parents of a child may not affect a parent’s visitation rights (see Domestic Relations Law § 240; Family Ct Act § 651), grandparent visitation under Domestic Relations Law § 72 implicates different equitable concerns (see Matter of Emanuel S., 78 NY2d at 181-182). Here, Carol Wilson’s therapist, whom she consulted both prior to and during this dispute, testified that Carol was suffering from post-traumatic stress as a result of the visitation and that her tension and anxiety affected her ability to parent and could be sensed by the children. In addition, the Law Guardian opined that the constant stress experienced by Carol around the visitation “carries over” to the child and could negatively impact the child.
We have recognized that “[v]isits with a grandparent are often a precious part of a child’s experience and there are benefits which devolve upon the grandchild . . . which he cannot derive from any other relationship” (id. at 181 [citations omitted]). This interest must yield, however, where the circumstances of the child’s family—including the worsening relations between the litigants and the strenuous objection to grandparent visitation by both parents—render the continuation of visitation with the grandparents not in the child’s best interest (see Friederwitzer, 55 NY2d at 95). We therefore determine that the child’s best interest is advanced by shielding her from the animosity and dysfunction between the parents and grandparents and by reducing, in the words of Carol Wilson’s therapist, the “paralyzing” stress experienced by the child’s mother attendant to the visitation. In light of this ruling, we need not address the Wilsons’ alternative argument challenging the constitutionality of Domestic Relations Law § 72.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges G.B. Smith, Cipabick, Rosenblatt, Read and R.S. Smith concur.
Order affirmed, with costs.

. Despite concluding that no change in circumstances had occurred since the initial order, the Law Guardian also acknowledged the existence of a “great deal of animosity” between the parties. Accordingly, he recommended that visitation with the younger child only be granted if the prior order pertaining to the older child remained in effect.

. The grandparents did not appeal the denial of their petition for visitation with the younger child.

. The parties and the courts below proceeded under the assumption that the “change of circumstances” standard is applicable to modifications of grandparent visitation orders. Given this posture, we have no occasion to consider the propriety of this assumption.