■ In the Matter of CHARLES JOHNSON, Respondent, v JOYCE ZIDES, Appellant, et al., Respondent. (And Another Related Proceeding.) [870 NYS2d 576]—

Lahtinen, J.

Petitioner, the father of a child born in 1997, sought, among other things, to terminate or reduce visitation directed in an earlier order between the child and respondent Joyce Zides (hereinafter the maternal grandmother). During the first few years of his life, the child spent significant time in the care of the maternal grandmother. In July 2001, a stipulated Family Court order granted joint legal custody to the father and the maternal grandmother, with physical custody to the father and liberal visitation for the maternal grandmother. Shortly thereafter, disputes between the father and the maternal grandmother resulted in a series of petitions as well as subsequent unsubstantiated contentions by the maternal grandmother that the father had abused the child. In July 2005, Family Court granted sole legal custody to the father with a detailed visitation schedule for the maternal grandmother, including every other weekend, every Wednesday evening, every other Thursday evening and various other times.

The child, for much of his young life, has struggled with behavioral and mental health issues. He had been hospitalized for these problems and his prescribed medications included an antipsychotic. The father commenced the current proceedings alleging, among other things, that the maternal grandmother deliberately did not administer the child's antipsychotic medication during visits resulting in significant adverse problems and that she also engaged in other conduct adverse to the father's

relationship with his son. Following a fact-finding hearing, Family Court rendered a lengthy decision directing, among other things, that the maternal grandmother's visitation be reduced to one six-hour visit per month and that she send a note home with the child after each visit outlining what had occurred in order to eliminate her past conduct of instructing the child to keep their activities secret. The maternal grandmother appeals.

The maternal grandmother urges reversal because Family Court recited in its decision the standard for a grandparent's initial visitation petition (*see Matter of Emanuel S. v Joseph E.*, 78 NY2d 178, 181 [1991]), rather than the standard for modifying visitation once it has been granted (*see Matter of Wilson v McGlinchey*, 2 NY3d 375, 380-381 [2004]). Each standard involves a two-prong analysis, with the second prong for both being the all-important consideration of the best interests of the child (*see id.* at 381; *Matter of Emanuel S. v Joseph E.*, 78 NY2d at 181). The standards differ in their first prong, with the initial application for grandparent visitation addressing the grandparent's standing (*see Matter of Emanuel S. v Joseph E.*, 78 NY2d at 181) and a modification application looking first at whether there has been a change of circumstances (*see Matter of Wilson v McGlinchey*, 2 NY3d at 380-381).

Here, Family Court incorrectly applied the initial visitation standard, finding standing for the maternal grandmother and then determining that the best interests of the child required diminished visitation. Notwithstanding this error, Family Court's detailed discussion of the pertinent facts and its credibility determinations—to which we accord deference (*see Matter of Fortner v Benson*, 306 AD2d 577, 578 [2003])—set forth an ample basis to consider the correct first prong of the analysis involving a change in an existing order, i.e., change of circumstances. And, upon our review of the record (*see Posporelis v Posporelis*, 41 AD3d 986, 989 [2007]; *cf. Young v Scully*, 214 AD2d 905, 907 [1995], *lv dismissed* 86 NY2d 883 [1995]), we find that such a change of circumstances was shown. The record establishes that the maternal grandmother engaged in conduct tending to undermine the father's parental authority, and that the relationship between the maternal grandmother and the father continued to deteriorate. Among other things, the maternal grandmother fostered an atmosphere of encouraging the child to keep secrets from the father, she misrepresented her legal authority regarding the child to a health care provider, she made baseless accusations against the father of child abuse and she disregarded the medicine regimen established for the child by his treating physician.

The best interests of the child is the second part of the analysis. Family Court directly addressed this issue at length and the record supports its conclusion that a significant reduction in the maternal grandmother's visitation was in the child's best interests. The child's pediatric psychiatrist testified regarding the child's difficulties, the treatment he had received, and his current need for certain medicines. Evidence at the hearing established that she did not administer medicine to the child when he was staying with her. There was proof that, after extended stays with the maternal grandmother, the child's behavior declined dramatically. When visitation with her was temporarily suspended, the child remained consistently calmer and happier. Family Court observed that the conflict between the households had a significant adverse impact on the child's mental health to the point where he had become suicidal. The child's best interests are served by Family Court's decision to reduce the amount of time and to place further restrictions upon the child's visitation with the maternal grandmother.

Peters, J.P., Spain, Kane and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.