Egan Jr., J.
Appeal from an order of the Family Court of Chemung County (Hayden, J.), entered January 28, 2013, which, among other things, partially granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Petitioner (hereinafter the mother) has seven children. At all times relevant to these proceedings, two of the mother’s children — Nicholas KK. (born in 1999) and Julianna I. (born in 2007) — resided with her in a duplex located in the City of Elmira, Chemung County; respondent Kathleen LL. (hereinafter the grandmother), the children’s maternal grandmother, occupied the other half of the duplex. By order entered April 7, 2011, Family Court granted the grandmother visitation with Nicholas and Julianna every week from 7:00 p.m. Friday to 7:00 p.m. Saturday and at such additional times as the parties may agree.
*1001 Following entry of the April 2011 order, the relationship between the mother and the grandmother deteriorated significantly, culminating in what the mother described as a literal tug-of-war over Julianna in July 2012. During the course of this incident, which was witnessed by the mother’s remaining children, the grandmother allegedly shoved the mother into a door and thereafter punched the mother in the face. As a result of this altercation, the grandmother was charged with harassment in the second degree,[1] and the mother commenced proceeding No. 1 alleging a family offense and seeking an order of protection. Additionally, the mother commenced proceeding No. 2 seeking to modify the prior order of visitation by suspending the grandmother’s visits with Nicholas and Julianna. Family Court, ex parte, issued a no-contact temporary order of protection in favor of the mother, Nicholas and Julianna and, following a hearing, granted the mother’s family offense petition and issued a two-year order of protection in favor of the mother. Family Court also granted the mother’s modification petition to the extent that the grandmother was granted supervised visitation with Julianna; such visitations were to be supervised by Julianna’s father, respondent Christopher I., and would occur at such times as could be agreed upon by Christopher I. and the grandmother. This appeal by the grandmother ensued.[2]
With respect to the mother’s family offense petition, “whether a family offense [has been] committed is a factual issue to be resolved by . . . Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal” (Matter of Shana SS. v Jeremy TT., 111 AD3d 1090, 1091 [2013], lv denied 22 NY3d 862 [2014] [internal quotation marks and citations omitted]; see Matter of Brito v Vasquez, 93 AD3d 842, 843 [2012]). Although Family Court did not specify which of the family offenses set forth in Family Ct Act § 821 (1) (a) the grandmother did in fact commit, our independent review of the record reveals that petitioner established — by a fair preponderance of the evidence (see Family Ct Act § 832; Matter of *1002 Christina MM. v George MM., 103 AD3d 935, 936 [2013]) — that the grandmother committed the family offense of harassment in the second degree.
Insofar as is relevant here, “[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same” (Penal Law § 240.26 [1]). Notably, “[t]he requisite intent may be inferred from the surrounding circumstances” (Matter of Shana SS. v Jeremy TT., 111 AD3d at 1091). Here, the mother testified that, during what began as a verbal confrontation with the grandmother and quickly escalated into a physical tug-of-war over Julianna, the grandmother “shoved [her] into the door” of her residence, causing her to fall back and strike her head on a door ornament. The mother further testified that, when she regained her footing and attempted to reclaim Julianna, the grandmother “punched [her] in the face.” As noted previously, this incident was witnessed by the mother’s remaining children and, as a result thereof, a child protective services report was indicated against the grandmother for inadequate guardianship.[3] Granting due deference to Family Court’s credibility determinations (see Matter of Robert AA. v Colleen BB., 101 AD3d 1396, 1399 [2012], lv denied 20 NY3d 860 [2013]; Matter of Wendy Q. v Jason Q., 94 AD3d 1371, 1372-1373 [2012]), such proof, coupled with the mother’s testimony as to the longstanding and ongoing discord with the grandmother, was sufficient to establish the underlying family offense — notwithstanding the grandmother’s testimony to the contrary.
As for the mother’s modification petition, “[a] petitioner seeking to modify an existing visitation order must demonstrate a change in circumstances that reflects a genuine need for the modification so as to ensure the best interests of the child” (Matter of Telfer v Pickard, 100 AD3d 1050, 1051 [2012] [internal quotation marks and citations omitted]; see Matter of Stellone v Kelly, 45 AD3d 1202, 1204 [2007]). Although Family Court did not expressly reference its threshold finding that a change in circumstances had occurred, our independent review of the record (see Matter of D’Angelo v Lopez, 94 AD3d 1261, 1262 [2012]; Matter of Bond v MacLeod, 83 AD3d 1304, 1305 [2011]) confirms that such a finding was warranted based upon *1003 the marked deterioration in the relationship between the mother and the grandmother (see Matter of Stellone v Kelly, 45 AD3d at 1204; see generally Matter of Johnson v Zides, 57 AD3d 1318, 1319 [2008]). Accordingly, Family Court properly considered whether — consistent with Julianna’s best interests— modification of the existing visitation arrangement was necessary (see Matter of Bond v MacLeod, 83 AD3d at 1305). In reviewing a modification request, we must consider a number of factors, including “the basis and reasonableness of the parent’s objections [to visitation between the grandparent and the child], the grandparent’s nurturing skills and attitude toward the parent, the . . . assessment [of the attorney for the child] and the child’s wishes” (Matter of Burton v Barrett, 104 AD3d 1084, 1087 [2013] [internal quotation marks and citation omitted]). To that end, although an acrimonious relationship between a parent and a grandparent typically is not a sufficient basis upon which to deny visitation (see Matter of Laudadio v Laudadio, 104 AD3d 1091, 1093 [2013]; Matter of Stellone v Kelly, 45 AD3d at 1204), the propriety of visitation in general — as well as the determination as to whether such visitation should be supervised — are matters generally left to the considerable discretion of Family Court, and the court’s resolution of these issues, if supported by a sound and substantial basis in the record, will not be disturbed by this Court (see Matter of Shana SS. v Jeremy TT., 111 AD3d at 1092; Matter of Burrell v Burrell, 101 AD3d 1193, 1194 [2012]).
Here, the mother acknowledged at the hearing that Julianna and the grandmother had a close relationship and, upon appeal, the attorney for the child argues that, absent proof that the grandmother posed a danger to Julianna, supervised visitation was unnecessary. The mother, however, testified at length regarding an ongoing family dispute with the grandmother— detailing what she described as the grandmother’s persistent attempts to interfere in various aspects of her life by, among other things, repeatedly filing reports with local law enforcement and social services agencies and commencing court proceedings. The mother also testified that the grandmother appears to have singled out Julianna for her affection, “favor [ing]” Julianna and having “[v]ery minimal” contact with the mother’s other children, causing the mother to be afraid that the grandmother will attempt to “grab” Julianna. Additionally, the documented— and quite literal — tug-of-war over Julianna in July 2012 speaks volumes as to the intensity of the animosity between the mother and the grandmother (cf. Matter of Wilson v McGlinchey, 2 NY3d 375, 381-382 [2004]) and raises well-founded concerns as to, insofar as is relevant here, the grandmother’s ability to respect *1004 the mother’s role as a parent and to act in a manner consistent with Julianna’s best interests. Under these circumstances, Family Court did not err in directing that the grandmother’s visitations with Julianna be supervised. That said, Family Court should not have effectively delegated the frequency and duration of such visitations to a third party, i.e., Christopher I., and we therefore deem it appropriate to remit this matter to Family Court for the fashioning of an appropriate and more definitive visitation schedule (cf. Matter of Nicolette I. [Leslie I.], 110 AD3d 1250, 1255 [2013]). The grandmother’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Peters, EJ, Garry, Rose and Clark, JJ, concur.
Ordered that the order is modified, on the law, without costs, by reversing so much thereof as provided for visitation; matter remitted to the Family Court of Chemung County for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.

. Although the precise disposition of the criminal charge is unclear, it appears that the grandmother was offered an adjournment in contemplation of dismissal.

. Athough the grandmother’s notice of appeal could have been drafted with greater clarity, we deem her appeal to be from each and every part of Family Court’s order. Additionally, although the mother’s modification petition clearly sought to suspend the grandmother’s visitation with respect to both Nicholas and Julianna, the proof at the hearing focused solely on Julianna and no mention of Nicholas was made in Family Court’s resulting order. In light of this, and given that the grandmother’s brief is limited to challenging the supervised visitation imposed with respect to Julianna, we will limit our visitation inquiry accordingly.

. As the mother voluntarily relocated to a local shelter and sought an order of protection against the grandmother following this incident, it does not appear that any action was taken against her or that any preventative services were ordered.