Devine, J.
Appeal from an order of the Family Court of Chemung County (Hayden, J.), entered April 11, 2014, which, among other things, dismissed petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.
The facts underpinning this appeal are more fully set forth in our decision in Matter of Christina KK. v Kathleen LL. (119 AD3d 1000 [2014]). Respondent Christopher I. (hereinafter the father) and respondent Christina KK. (hereinafter the mother) are the parents of the child (born in 2007). Petitioner is the maternal grandmother of the child and was awarded specified visitation with her. The relationship between petitioner and the mother significantly deteriorated and, after the mother sought to suspend the order of visitation, Family Court modified it to allow supervised visitation “at times to be agreed upon by” the father and petitioner. Petitioner appealed from that order and, while we agreed that supervised visitation was appropriate, we remitted so that Family Court could fashion “an appropriate and more definitive visitation schedule” (Matter of Christina KK. v Kathleen LL., 119 AD3d at 1004).
While the appeal in Matter of Christina KK. v Kathleen LL. (supra) was pending, the relationship between the father and petitioner deteriorated to the point that he refused to agree to visitation. Petitioner commenced a proceeding to modify the visitation order and allow for unsupervised visitation, as well as one to enforce the original visitation order. The father responded with a modification petition that sought to terminate visitation. Family Court conducted a hearing on the three proceedings and, at the close of petitioner’s case, granted the father’s motion to dismiss the enforcement proceeding. Family Court thereafter ordered that, among other things, visitation be suspended. Petitioner appeals.
“Where, as here, an existing order of visitation for a *1085 grandparent exists, the threshold determination is whether there has been a change in circumstances sufficient to warrant modification” (Matter of Layton v Grace, 129 AD3d 1147, 1148 [2015] [citations omitted]; see Matter of Wilson v McGlinchey, 2 NY3d 375, 380 [2004]). Family Court did not make an express finding in that regard, but the record is sufficient for us to make our own determination (see Matter of Layton v Grace, 129 AD3d at 1148; Matter of Christina KK. v Kathleen LL., 119 AD3d at 1002-1003). In our view, the deterioration of the relationship between petitioner and the father, which deprived petitioner of visitation with the child, demonstrates the requisite change in circumstances (see Matter of Layton v Grace, 129 AD3d at 1149).
The question accordingly becomes what visitation schedule is in the best interests of the child, and the relevant factors in that inquiry include “the nature and extent of the existing relationship between the grandparent and child [,] . . . the basis and reasonableness of the parent’s objections, the grandparent’s nurturing skills and attitude toward the parent, the . . . [position of the attorney for the child] and the child’s wishes” (Matter of Burton v Barrett, 104 AD3d 1084, 1087 [2013] [internal quotation marks and citations omitted]; see Matter of E.S. v P.D., 8 NY3d 150, 160-161 [2007]; Matter of Layton v Grace, 129 AD3d at 1149). Family Court is afforded broad discretion in weighing those factors “to determine an appropriate visitation schedule, and its determination will not be disturbed if supported by a sound and substantial basis in the record” (Matter of Layton v Grace, 129 AD3d at 1149).
Petitioner admitted that she has poor relationships with respondents, with Family Court aptly describing them as “poisonous.” Family Court credited the testimony of the father that he stopped visitations after petitioner was “disrespectful” to him during an argument at his home, insulting him in front of his other children. The father also observed that petitioner had made disparaging comments about him and the mother during supervised visitation, and was particularly concerned that the comments would continue if visitation occurred at petitioner’s home as she demanded. Petitioner frequently called and visited the father after he put a stop to visitation and behaved inappropriately by engineering ways to see the child outside of his supervision, although this behavior must be viewed in the context of the father’s unilateral decision to end visitation.
This toxic relationship between petitioner and respondents cannot be ignored; nevertheless, “an acrimonious relationship *1086 is generally not sufficient cause to deny visitation” by itself (Matter of E.S. v P.D., 8 NY3d at 157; see Matter of Stellone v Kelly, 45 AD3d 1202, 1204 [2007]). Petitioner testified that the child lived with and was raised by her until the child was over four years of age, and that the two had developed a “very close bond” as a result. The father did not question the existence of a close relationship between petitioner and the child and, in fact, he stated that petitioner mostly behaved appropriately during visits and that the child had “good reactions” to them. The father failed to explain how the child was harmed by whatever disparaging comments were made by petitioner — indeed, he acknowledged that “she didn’t understand” them — and he made no effort to address the issue with petitioner before putting a stop to visitation (compare Matter of Johnson v Zides, 57 AD3d 1318, 1320 [2008]). Moreover, a Lincoln hearing with the child was apparently not conducted, and the attorney for the child advised Family Court that the child did not have a problem with petitioner and that her only concern was to avoid entanglement in the ongoing feud between petitioner and respondents. As such, the attorney for the child on appeal advocates for continued supervised visitation, albeit with a set schedule and a different supervisor.
The vast discretion the order of visitation afforded the father in deciding whether to allow or deny visitation was problematic (see Matter of Christina KK. v Kathleen LL., 119 AD3d at 1004), and the solution to a dispute between petitioner and the father would seemingly be to modify the arrangement to provide for specified visitation supervised by a third party. Family Court, relying solely upon their poor relationship, instead elected to suspend visitation altogether. We are mindful that Family Court is painfully aware of the prior history between the parties and may well have grounds to believe that the best interests of the child lie in suspending visitation with petitioner altogether. That being said, a sound and substantial basis in the record before us, which illustrates a positive relationship between petitioner and the child despite the toxic relationship between petitioner and respondents, does not exist for that finding (see e.g. Matter of Burton v Barrett, 104 AD3d at 1087; Matter of Johnson v Zides, 57 AD3d at 1320). Under the circumstances present here, we deem it prudent to leave the suspension of visitation in effect on a temporary basis and remit so that Family Court may further develop the record, ascertain the wishes of the child, and fashion an appropriate order (see Matter of Tamara FF. v John FF., 75 AD3d 688, 690 [2010]).
The remaining arguments of petitioner, to the extent that *1087 they are not rendered academic in light of the foregoing, have been examined and rejected.
Lahtinen, J.P., Garry, Rose and Lynch, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as suspended supervised visitation with petitioner; matter remitted to the Family Court of Chemung County for further proceedings not inconsistent with this Court’s decision and, pending said proceedings, the visitation terms of said order shall remain in effect on a temporary basis; and, as so modified, affirmed.