Matter of Heather NN. v Vinnette OO. (2019 NY Slip Op 09325)





Matter of Heather NN. v Vinnette OO.


2019 NY Slip Op 09325


Decided on December 26, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 26, 2019

526764

[*1]In the Matter of Heather NN., Respondent-Appellant,
v
Vinnette OO., Appellant-Respondent. (And Another Related Proceeding.)

Calendar Date: November 12, 2019

Before: Garry, P.J., Egan Jr., Lynch and Aarons, JJ.


Tully Rinckey PLLC, Vestal (Tauseef S. Ahmed of counsel), for appellant-respondent.
Heather NN., Binghamton, respondent-appellant pro se.
Larisa Obolensky, Delhi, attorney for the child.



Garry, P.J.
Cross appeals from an order of the Family Court of Broome County (Young, J.), entered May 22, 2018, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for visitation with the subject child.
Respondent is the biological mother of a child (born in 2008) who was conceived via artificial insemination during a same-sex relationship between respondent and petitioner. Petitioner is not biologically related to the child and did not adopt her. The parties separated in 2009, approximately one year after the child's birth, and the child remained with respondent. Respondent permitted petitioner to have parenting time for approximately two years, but then terminated all visitation. Thereafter, respondent occasionally sent pictures of the child to petitioner and permitted petitioner to speak with the child on the telephone, but directed petitioner not to use her real name or tell the child who she was. The parties agree that petitioner has not been allowed any parenting time since 2010.
In January and February 2011, petitioner sought parenting time and custody of the child; both petitions were dismissed by Family Court for lack of standing. Shortly thereafter, respondent filed a family offense petition alleging harassment and stalking, and the court issued a two-year order of protection precluding petitioner from contact with respondent or the child.
Petitioner commenced her present proceeding in 2016 seeking joint legal custody and parenting time, following the issuance of Matter of Brooke S.B. v Elizabeth A.C.C. (28 NY3d 1 [2016]). Respondent then filed another family offense petition, alleging stalking, harassment and disorderly conduct. After a trial and a Lincoln hearing, Family Court found that petitioner had standing to seek legal custody and parenting time. The court granted sole legal custody and physical placement of the child to respondent and awarded parenting time to petitioner in a graduated schedule of parenting time to begin with one hour weekly in therapeutic counseling sessions for eight weeks. Thereafter, petitioner would have two hours of parenting time each weekend, supervised by respondent or her designee, for four months, followed by four hours each weekend, supervised by respondent or her designee, for four months, and then four hours of unsupervised parenting time each weekend for three months. The order provided that the schedule of four hours of weekly unsupervised parenting time would continue after the completion of the first year, and petitioner would then be free to commence modification proceedings seeking expanded contact with no need to show a change in circumstances. The court dismissed respondent's family offense petition. These cross appeals ensued.[FN1] [FN2] "Only a 'parent' may petition for custody or visitation under Domestic Relations Law § 70, yet the statute does not define that critical term, leaving it to be defined by the courts" (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d at 18). Before 2016, New York courts held that an individual who was not a child's biological parent and had not adopted the child did not fall within the statutory definition of a parent and, thus, lacked standing to seek custody or parenting time (see Debra H. v Janice R., 14 NY3d 576, 597 [2010], cert denied 562 US 1136 [2011]; Matter of Alison D. v Virginia M., 77 NY2d 651, 656-657 [1991]). Petitioner's 2011 custody and visitation petitions were dismissed in accord with that authority. In 2016, the Court of Appeals overruled these precedents and expanded the statutory definition of a parent, holding that when a biological parent's former partner "shows by clear and convincing evidence that the parties agreed to conceive a child and to raise the child together, the non-biological, non-adoptive partner has standing to seek visitation and custody under Domestic Relations Law § 70" (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d at 14; see Matter of deMarc v Goodyear, 163 AD3d 1430, 1431 [2018], lv dismissed 32 NY3d 1184 [2019]; Matter of K.G. v C.H., 163 AD3d 67, 71 [2018]). Referring to this analysis as "the conception test," the Court of Appeals expressly declined to find that any single test would cover all potential circumstances and held open the possibility that parenthood could also be established by other means (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d at 27-28; see Matter of Chimienti v Perperis, 171 AD3d 1047, 1048-1049 [2019], lv denied 33 NY3d 912 [2019]; Matter of K.G. v C.H., 163 AD3d at 72). Here, respondent argues that Family Court improperly applied the conception test and erred in determining that petitioner has standing.
Petitioner and respondent met in 2004 at a counseling facility in Brooklyn where petitioner was required to undergo substance abuse counseling as a result of a 2002 criminal conviction relating to the sale of narcotics. Respondent was her counselor.[FN3] The parties entered into an intimate relationship and, after petitioner completed her counseling in 2005, respondent moved from Brooklyn to the City of Binghamton, Broome County to live with petitioner in a home that petitioner owned there. Petitioner admitted that she was involved in buying and selling narcotics during this period. Several months after respondent began residing with petitioner, petitioner's home was searched pursuant to a warrant and petitioner was arrested for the sale of narcotics. She was incarcerated for approximately 14 months in 2006 and 2007. The parties continued their relationship during this period. Respondent continued to reside in petitioner's home, visited petitioner regularly, and used a power of attorney to manage petitioner's business affairs, including several rental properties. Respondent wrote letters to petitioner — subsequently admitted into evidence — in which respondent stated her desire to marry petitioner and have children with her.
Following petitioner's release, the parties agreed to conceive a child using artificial insemination. Both parties attended appointments with a fertility doctor. In testimony that Family Court found to be credible, petitioner stated that she and respondent agreed to select a sperm donor who would reflect petitioner's ethnic background. There were two inseminations; petitioner was present and injected the sperm on at least one of these occasions. Petitioner's credit card was used to pay the related expenses.[FN4] Petitioner attended at least one baby shower where friends and family members of both parties were present. Petitioner attended respondent's prenatal appointments, was present when the child was born, and cut the child's umbilical cord. The child was given two last names, reflecting the parties' two surnames.[FN5] Petitioner testified that the child was named, in part, after petitioner's mother. Petitioner assisted in buying items for the child and shared day-care costs with respondent. The two parties are listed as the child's two mothers in some of her medical and immunization records. Respondent testified that she told petitioner that the child would be part of petitioner's life if they continued to reside together and also if they separated, so long as petitioner did not engage in illegal activities, but that if petitioner did so engage, she would not have a role in the child's life.
Upon this record, we find that Family Court correctly determined that petitioner falls within the statutory definition of a parent and, thus, has standing in this proceeding. Contrary to respondent's argument, Family Court did not err in applying the conception test to determine petitioner's standing rather than a "functional" test that would have examined the relationship between petitioner and the child after the child's birth (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d at 27). The evidence fully establishes that the parties planned jointly for the child's conception, participated jointly in the process of conceiving the child, planned jointly for her birth, and planned to raise her together. Accordingly, petitioner satisfied her burden to prove by clear and convincing evidence that she and respondent entered into an agreement to conceive the child and raise her as co-parents. Thus, she established her standing to seek custody and parenting time under the conception test without regard to her subsequent relationship with the child (see id. at 27-28; Matter of Frank G. v Renee P.-F., 142 AD3d 928, 930-931 [2016], lv dismissed 28 NY3d 1050 [2016]; compare Matter of K.G. v C.H., 163 AD3d at 78-79).
Respondent next challenges Family Court's parenting time award. A child's best interests "generally lie with a healthy, meaningful relationship with both parents" (Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016]; accord Matter of Adam E. v Heather F., 151 AD3d 1212, 1214 [2017]). "The natural right of visitation jointly enjoyed by the noncustodial parent and the child is more precious than any property right . . . [and] the denial of those rights to a . . . parent is a drastic remedy which should only be invoked when there is substantial evidence that visitation would be detrimental to the child" (Matter of Ciccone v Ciccone, 74 AD3d 1337, 1338 [2010] [internal quotation marks, brackets and citations omitted], lv denied 15 NY3d 708 [2010]). Initially, we reject respondent's contention that petitioner is a parent "only by operation of law" and, thus, is not entitled to the same parenting time rights as a biological or adoptive parent. Respondent cites no law to support this theory, and we find nothing in Domestic Relations Law § 70 or the pertinent case law suggesting that such a distinction exists. On the contrary, the Court of Appeals stated in Matter of Brooke S.B. that the issue to be decided was "who qualifies as a parent with coequal rights" (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d at 26 [internal quotation marks omitted; emphasis added]; accord Matter of Paese v Paese, 175 AD3d 502, 504 [2019]). Thus, we will "presume[] that parental visitation is in the best interest[s] of the child in the absence of proof that it will be harmful" (Matter of Granger v Misercola, 21 NY3d 86, 90 [2013] [internal quotation marks and citation omitted]; see Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1272 [2019]; Matter of Robert G. v Tammy H., 149 AD3d 1192, 1193-1194 [2017]; Matter of Alan U. v Mandy V., 146 AD3d 1186, 1188 [2017]).[FN6]
Respondent contends that parenting time would be detrimental to the child for several reasons: first, petitioner's admitted history of criminal drug sales and alleged continued involvement in such activity; second, her alleged acts of domestic violence and harassment against respondent; and third, the lack of any relationship or bond between petitioner and the child. In addressing the first of these contentions, Family Court questioned the credibility of respondent's objection, noting that respondent knew of petitioner's involvement in drug sales early in their relationship and nevertheless chose to continue the relationship during petitioner's incarceration and, later, to have a child with her. Petitioner acknowledged that she has prior convictions for drug sales, but asserted that she is no longer involved in illegal activities and that she now supports herself with income from several rental properties that she owns or manages. There was extensive testimony describing these properties, and several witnesses testified that they had observed petitioner collecting rents and otherwise managing the properties. Although respondent disputed the sufficiency of petitioner's rental income, she offered no evidence that petitioner continues to engage in illegal activities. The court noted the impossibility of proving a negative and found that there was no credible evidence that petitioner was currently involved in criminal or otherwise harmful conduct. In light of the court's extensive opportunity to assess the parties' veracity and observe their demeanor during the trial — which took place on seven days over a period of more than six months — we defer to this credibility assessment (see generally Matter of Charles I. v Khadejah I., 149 AD3d 1422, 1424 [2017]).
Respondent next contends that Family Court failed to consider petitioner's alleged history of family offenses and domestic violence. Although the court did not specifically address this issue in the context of parenting time, it gave extensive consideration to petitioner's history in the context of its dismissal of respondent's family offense petition. The court found that petitioner had harassed and threatened respondent and had sent her an angry, profane text message on the child's eighth birthday in 2016, and further found that the relationship between petitioner and respondent was too acrimonious to permit an award of joint custody. However, the court also found that almost all of petitioner's proven bad acts, except for the text message, had taken place before 2011, and that the text message, alone, did not rise to the level of a family offense. Deferring to the credibility assessments underlying these findings and viewing petitioner's behavior "in the context of [respondent's] unilateral decision to end visitation," we concur with the court's implied finding that the parties' acrimonious history did not constitute substantial evidence that parenting time would be harmful to the child (Matter of Kathleen LL. v Christopher I., 135 AD3d 1084, 1085 [2016]; see Matter of Helen G. [James K.T.-Laverne W.], 96 AD3d 666, 666-667 [2012]; Matter of Schack v Schack, 98 AD2d 802, 802 [1983]).
Finally, we turn to the most delicate issue that confronted Family Court in determining whether parenting time would be harmful to the child — the absence of a current relationship between petitioner and the child, and the child's lack of awareness of petitioner's role in her life. No visits have occurred between petitioner and the child since the child was less than three years old. Respondent testified that the child is unaware of the circumstances of her conception, does not remember petitioner, and does not know about petitioner's role in her life. The court credited this testimony, finding that the child does not know of petitioner as her mother. Respondent argues that these circumstances should be the basis of a determination that parenting time would be harmful to the child. Notably, the child's lack of knowledge resulted solely from respondent's unilateral decision to cut off her contact with petitioner; in the context of custody determinations, this Court has repeatedly held that a parent's unwillingness to foster a positive relationship with a child's other parent is inconsistent with the child's best interests (see e.g. Matter of Sue-Je F. v Alan G., 166 AD3d 1360, 1363-1364 [2018]). Although parenting time may sometimes be denied because of a parent's prolonged lack of effort to maintain a relationship with a child (see e.g. Matter of Wise v Burks, 61 AD3d 1058, 1058-1059 [2009]), this case does not present such a circumstance. Instead, petitioner has clearly maintained her wish for a relationship with the child, and has consistently made every effort to regain contact that was allowed to her by the law. Under these circumstances, and in the absence of any other proof that contact with petitioner would be harmful to the child, we do not find that the child's current unfamiliarity with petitioner, alone, provides a basis for the denial of parenting time.
We thus agree with Family Court that the record does not contain substantial evidence that visits with petitioner would be harmful to the child. Accordingly, the presumption that parenting time was in the child's best interests was unrebutted, and Family Court was required to "structure a schedule that results in frequent and regular access by [petitioner]" (Matter of Adam E. v Heather F., 151 AD3d at 1214; accord Matter of Carl KK. v Michelle JJ., 162 AD3d 1273, 1275 [2018]). We disagree with respondent that, in so doing, the court gave insufficient attention to the lack of an existing relationship between petitioner and the child. The court's decision plainly reveals its mindfulness of the sensitive nature of the circumstances. The risk of overwhelming, confusing or stressing the child was expressly noted. The court cautioned the parties to proceed with her welfare in mind, and designed a graduated schedule that begins in the supportive environment of therapeutic counseling and will transition slowly to supervised parenting time at first and, finally, after a period of months, to unsupervised contact.
The attorney for the child argues that, before making its parenting time determination, Family Court should have appointed an independent, neutral forensic evaluator to report on all pertinent circumstances, including the child's wishes. That request was not, however, preserved for appellate review by an application at trial (see Matter of Quinones v Quinones, 139 AD3d 1072, 1074 [2016]). If the contention had been properly presented, we would not have found that modification was warranted; again, Family Court had the benefit of a Lincoln hearing and a seven-day trial at which both parties and several other witnesses gave detailed testimony.
"Family Court has broad discretion in fashioning a parenting schedule that is in the best interests of the child, and it is well settled that the court's findings in this regard are entitled to great deference unless they lack a sound and substantial basis in the record" (Matter of LaBaff v Dennis, 160 AD3d 1096, 1097-1098 [2018] [internal quotation marks, brackets and citations omitted]; accord Matter of Kristen II. v Benjamin JJ., 169 AD3d 1176, 1178 [2019]). The record fully supports the court's findings here, and we find it necessary to adjust the parenting time schedule only in two relatively minor ways. First, we agree with the attorney for the child that, in view of the parties' acrimonious history, they may require assistance in selecting a therapeutic counselor. Thus, we modify the order to provide that if the parties cannot agree on a counselor, each party must submit to Family Court the name or names of at least one counselor that she would find acceptable, and the court will then make the selection from those names. Second, we find that, to assist the child in developing familiarity with the therapeutic counselor and the counseling process, it will be beneficial for her to attend three sessions alone with the counselor before petitioner joins the sessions to begin the eight-week period of parenting time during therapeutic counseling.
Egan Jr., Lynch and Aarons, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by providing a method for selecting a therapeutic counselor and adjusting the schedule of therapeutic counseling as set forth herein, and, as so modified, affirmed.



Footnotes

Footnote 1: This Court granted a motion to stay Family Court's parenting time order while the cross appeals were pending and subsequently denied a motion to vacate the stay.

Footnote 2: We deem petitioner's cross appeal to be abandoned, as her brief raises no challenges to Family Court's order and seeks only affirmance (see Matter of Weber v Weber, 100 AD3d 1244, 1245 n [2012]). Likewise, as respondent's brief does not challenge the dismissal of her family offense petition, we deem any related issues to be abandoned (see Matter of Christina Z. v Bishme AA., 132 AD3d 1102, 1103 n [2015]).

Footnote 3: The parties' testimony presented a conflict as to this relationship, and we defer to Family Court's factual finding in this respect (see e.g. Matter of Destiny NN. [Nikita ZZ.], 174 AD3d 1079, 1079 [2019]).

Footnote 4: Respondent testified that she later paid petitioner back; Family Court did not resolve the conflict between this testimony and petitioner's testimony that she covered the cost.

Footnote 5: After the parties separated, respondent stopped using petitioner's last name as part of the child's name.

Footnote 6: Contrary to the arguments of respondent and the attorney for the child, Family Court did not err in applying this well-established presumption in making its parenting time award, rather than analyzing the factors used in the best interests analysis that is essential to a custody determination (see e.g. Matter of Patrick EE. v Brenda DD., 129 AD3d 1235, 1236 [2015], lv denied 26 NY3d 908 [2015]).