Matter of Richard CC. v Lacey DD. (2025 NY Slip Op 06577)

Matter of Richard CC. v Lacey DD.

2025 NY Slip Op 06577

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CV-24-1715
[*1]In the Matter of Richard CC., Appellant,
v
Lacey DD., Respondent. (And Four Other Related Proceedings.)
In the Matter of Attorney for the Children, Respondent,
v
Richard CC., Appellant, and Lacey DD., Respondent. (Proceeding No. 6.)

Calendar Date:October 8, 2025

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Hancock Estabrook, LLP, Syracuse (James P. Youngs of counsel), for appellant.
Rural Law Center of New York, Inc., Plattsburgh (Keith F. Schockmel of counsel), for Lacey DD., respondent.
Dennis B. Laughlin, Cherry Valley, attorney for the children, respondent.

Pritzker, J.
Appeal from an order of the Family Court of Otsego County (John Lambert, J.), entered September 13, 2024, which, among other things, granted petitioner's application, in proceeding No. 6 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Richard CC. (hereinafter the father) and Lacey DD. (hereinafter the mother) are the unmarried parents of two daughters (born in 2009 and 2010). Pursuant to an August 2019 order on consent, the parties shared physical custody, which included significant parenting time and telephone contact for the father, and the mother was granted sole legal custody. In an October 2022 order, Family Court dismissed a modification petition filed by the father seeking sole legal custody but granted his violation petition and admonished the mother for her noncompliance.[FN1]
Subsequently, the father filed enforcement and modification petitions followed by a violation petition. Soon thereafter, the attorney for the child (hereinafter AFC) filed an order to show cause and a modification petition seeking to suspend the father's parenting time and communication with the children. At a court appearance following these filings, the parties agreed to a temporary order, which superseded the August 2019 order, granting the father two hours of parenting time each Saturday at a designated public place. The father filed two additional violation petitions against the mother. Finally, the mother, through an order to show cause accompanied by a modification petition, sought to temporarily suspend the father's parenting time with the children.[FN2] A fact-finding hearing on all petitions was held in July 2024,[FN3] after which Family Court dismissed the father's violation petitions, finding that the mother did not willfully violate the terms of the order but that the children no longer wished to attend visits with the father of their own volition and because of his actions toward them.[FN4] The court granted the AFC's petition, finding that there was a change in circumstances which warranted modification of the terms of the father's parenting time and that it was in the children's best interests to limit that time to counseling sessions at the discretion of the therapist treating the children. The father appeals.
We agree with the father's contention that Family Court's decision to grant the AFC's modification petition and terminate his visitation outside of counseling sessions is not supported by a sound and substantial basis in the record. Initially, as the father does not dispute that there has been a change in circumstances since the prior order, "our inquiry distills to whether the record supports [the court's] determination that the suspension of the father's visitation serves the [children's] best interests" (Matter of Robert D. v Sarah E., 238 AD3d 1222, 1223 [3d Dept 2025]; see Matter of Angelica CC. v Ronald DD., 220 AD3d 1064, 1067 [3d Dept 2023], lv denied 40 NY3d 909 [2024]). "Visitation with a noncustodial parent is presumed to [*2]be in the best interests of the [children], but that presumption may be overcome where the party opposing visitation sets forth compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the [children's] welfare" (Matter of Robert D. v Sarah E., 238 AD3d at 1223 [internal quotation marks and citations omitted]; see Matter of Melissa H. v Jordan G., 238 AD3d 1296, 1298 [3d Dept 2025]; Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1416 [3d Dept 2021]). "Unless visitation is inimical to the children's welfare, the court is required to structure a schedule which results in frequent and regular access by the noncustodial parent" (Matter of Ellen TT. v Parvaz UU., 178 AD3d 1294, 1297 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 905 [2020]; see Matter of Cecelia BB. v Frank CC., 200 AD3d at 1416). "The court cannot delegate to anyone . . . its authority to do so, as such delegation can have the practical effect of denying a parent his or her right to visitation with his or her [children] indefinitely without the requisite showing that visitation would be detrimental to the [children's] welfare" (Matter of Ceclia BB. v Frank CC., 200 AD3d at 1416 [internal citations, quotation marks and brackets omitted]; see Matter of Theressa M. v Gaddiel M., 228 AD3d 1040, 1040 [3d Dept 2024]). "The wishes of the [children] . . . are not determinative but are entitled to consideration as part of the best interests analysis" (Matter of Gabrielle Q. v James R., 233 AD3d 1407, 1408 [3d Dept 2024] [citations omitted]; see Matter of Robert D. v Sarah E., 238 AD3d at 1223).
At the fact-finding hearing, the father testified that he had consistently exercised his parenting time under the 2019 custody order and maintained a close relationship with his daughters until July 2023, when visitation abruptly ceased. He described positive interactions with the children during hospital visits in the fall of 2023 and testified that he continued to appear for court-ordered visits even after they stopped attending. He denied any wrongdoing and expressed a strong desire to reunify with his daughters through family counseling. He testified to his belief that the mother created a toxic environment and interfered with his relationship with the children. He also referenced alleged sexual abuse by the mother's boyfriend against one of the children, which the record demonstrates led to commencement of a neglect proceeding and a criminal prosecution. The mother testified that she supported the children's autonomy and emotional safety, explaining that both daughters had expressed a strong desire to cease contact with the father. She stated that the younger child became uncomfortable during a visit when the father allegedly discussed sensitive topics despite her objections, and that the older daughter had refused all contact. The mother denied coaching the children or violating court-ordered visitation, asserting [*3]that she prioritizes the children's mental health.
It is clear from the record that the children are both experiencing mental health struggles and have had difficulties with the father's parenting style. Certainly, these issues affected their relationship with the father and apparently resulted in a desire not to see or communicate with him. However, we do not find that the record supports Family Court's implicit determination that visitation with the father would be detrimental to the children (see Matter of Melissa H. v Jordan G., 238 AD3d at 1301; Matter of Cecelia BB. v Frank CC., 200 AD3d at 1417; Matter of Laware v Baldwin, 42 AD3d 696, 698 [3d Dept 2007]). Also troubling is the lack of testimony regarding the boyfriend's sexual abuse of the older child and its effect on the children. Moreover, the court impermissibly delegated its authority to a third party — a therapist — to determine when or if such therapeutic parenting time should commence (see Matter of Cecelia BB. v Frank CC., 200 AD3d at 372-373; Matter of Rice v Wightman, 167 AD3d 1529, 1530-1531 [4th Dept 2018], lv denied 33 NY3d 903 [2019]; Matter of Kimberly C. v Christopher C., 155 AD3d 1329, 1335 [3d Dept 2017]). As such, we reverse the order and, while "our fact-finding authority is as broad as that of Family Court, given the passage of time since the fact-finding hearing, we remit the matter to Family Court for further updated fact-finding, if necessary, before a different judge" (Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1425 [3d Dept 2018] [internal citations omitted]). On remittal, Family Court should consider whether an updated Lincoln hearing is prudent, as well as whether psychological evaluations (see Family Ct Act § 251) and/or an investigation into the alleged sexual abuse (see Family Ct Act § 1034 [1]) should be ordered in an attempt to get to the root of the children's refusal to see, or even communicate, with the father. Most importantly, should the court find that therapeutic visitation is necessary, a definitive schedule must be set forth (see Matter of Christina KK. v Kathleen LL., 119 AD3d 1000, 1003-1004 [3d Dept 2014]; see e.g. Matter of Lora PP. v Alphonso PP., 221 AD3d 1321, 1324 [3d Dept 2023]). 
Finally, we are unpersuaded by the father's argument that he received ineffective assistance of counsel. The father's attorney vigorously cross-examined the mother in the fact-finding hearing and spent a substantial amount of time examining the father, giving voice to his side of the story and his suspicions of the harm to the children as a result of the boyfriend's actions and the mother's inaction. The father points to specific alleged failings of counsel, however, "[c]ounsel's representation need not be perfect and, as it is not the role of this Court to second-guess counsel's trial strategy or tactics, a party seeking to prevail on an ineffective assistance of counsel claim must do something more than engage in hindsight speculation as to the viability [*4]of counsel's strategy" (Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1077 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Dianne SS. v Jamie TT., 235 AD3d 1138, 1143 [3d Dept 2025]), as defendant now does on appeal. Accordingly, we are satisfied that the father received meaningful representation (see Matter of Laura E. v Matthew E., 226 AD3d 1117, 1118-1119 [3d Dept 2024]; Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d 1293, 1298-1299 [3d Dept 2023]).We have examined the father's remaining contentions and have found them to be without merit.
Clark, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as suspended Richard CC.'s parenting time; matter remitted to the Family Court of Otsego County for further proceedings not inconsistent with this Court's decision before a different judge, and, pending said proceedings, the terms of said order shall remain in effect on a temporary basis; and, as so modified, affirmed.

Footnotes

Footnote 1: This decision was affirmed by this Court (Matter of Richard CC. v Lacey DD., 230 AD3d 1389 [3d Dept 2024]).
Footnote 2: While this flurry of petitions was ongoing, the record reflects that a neglect and abuse proceeding and criminal proceeding were commenced based upon an alleged sexual assault that occurred in September 2023, perpetrated by the mother's boyfriend on the older child. 

Footnote 3: In the weeks prior to the fact-finding hearing, the father filed an order to show cause seeking sole custody of the children. The return date was the same date as fact-finding. Despite this, it does not appear from the order on appeal that this order to show cause was addressed.
Footnote 4: Family Court did not address the father's earlier modification petition.