# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:   June 11, 2015                    518717
_____

In the Matter of PATRICK EE.
    et al.,
                        Respondents,

        v

BRENDA DD.,
                        Appellant,

        and

CORTLAND COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                        Respondent.

(Proceeding No. 1.)                        MEMORANDUM AND ORDER
_____

In the Matter of BRENDA DD.,
                        Appellant,

        v

PATRICK EE. et al.,
                        Respondents.

(Proceeding No. 2.)

(And Another Related Proceeding.)
_____


Calendar Date:   April 21, 2015

Before:   Lahtinen, J.P., McCarthy, Garry and Rose, JJ.

                    _____


        Lisa K. Miller, McGraw, for appellant.

        Margaret McCarthy, Ithaca, for Patrick EE. and another,
respondents.

Natalie B. Miner, Homer, attorney for the children.

_____

McCarthy, J.

Appeal from a decision and an order of the Family Court of Cortland County (Campbell, J.), entered January 6, 2014 and March 21, 2014, which, among other things, granted petitioners' application, in proceeding No. 1 pursuant to Family Ct Act article 6, for modification of a prior order of visitation.

Patrick EE. (hereinafter the father) and Brenda DD. (hereinafter the mother) are the parents of a daughter (born in 2000) and a son (born in 2001).  In 2012, after the children had twice been found to be neglected by the mother (see Matter of Gloria DD. [Brenda DD.], 99 AD3d 1044, 1044-1045 [2012]), the father and the stepmother petitioned for custody and Family Court ordered such custody to them.  That same order devised a visitation schedule for the mother whereby she would receive, among other things, weekly supervised visitation beginning in July 2012, followed by weekly unsupervised visitation commencing in December 2012.

In February 2013, after three unfounded reports were made to Child Protective Services (hereinafter CPS) regarding the children, the father and the stepmother commenced proceeding No. 1 seeking a modification of the visitation arrangement so as to have such visitation either supervised or terminated.  In response, the mother commenced proceeding No. 2 and another proceeding, eventually alleging a violation of the July 2012 order, stemming in part from the children's unsuccessful discharge from counseling, and seeking unsupervised visitation and access to the children's school, medical and counseling records.  Following fact-finding and Lincoln hearings, Family Court issued a decision and then an order that awarded sole custody of the children to the father and the stepmother and suspended the mother's visitation pending a further order of the court.  The mother now appeals from both the decision and the

order.[1]

There is a sound and substantial basis for Family Court's determination to suspend the mother's visitation. To modify an order of visitation or custody, a party must demonstrate a change in circumstances necessitating a modification in order to ensure the best interests of the children (see Matter of Chris X. v Jeanette Y., 124 AD3d 1013, 1014 [2015]; Matter of Ford v Baldi, 123 AD3d 1399, 1400 [2014]). Relevant factors in determining the propriety of a custody modification include "'maintaining stability for the child[ren], the respective home environments, length of the current custody arrangement, each parent's relative fitness and past parenting performance, and willingness to foster a healthy relationship with the other parent'" (Matter of Chris X. v Jeanette Y., 124 AD3d at 1014, quoting Matter of Joshua UU. v Martha VV., 118 AD3d 1051, 1052 [2014]). A petitioner seeking the termination of a noncustodial parent's visitation must overcome the presumption that the children's best interests are furthered by such visitation by "showing, by a preponderance of the evidence, that visitation would be harmful to the child[ren]" (Matter of Granger v Misercola, 21 NY3d 86, 92 [2013]; see Matter of Owens v Chamorro, 114 AD3d 1037, 1039 [2014]; Matter of VanBuren v Assenza, 110 AD3d 1284, 1284 [2013]).

Here, there was sufficient evidence to allow for a reasonable inference that the mother had made or caused to be made the unfounded CPS reports regarding the father and the stepmother. Those reports included allegations that the father sexually molested the daughter, that the father and stepmother directed racist and homophobic remarks at the son, that they failed to provide proper food to the children, that the stepmother had struck the daughter in the head and caused her ear to bleed, that the stepmother had threatened to poison the children and that the stepmother has carved an initial into the son's hair and informed him that it represented a homophobic slur

---

[1] The mother's appeal from the decision entered January 6, 2014 must be dismissed, as a decision is not an appealable paper (see CPLR 5512 [a]; Matter of Clary v McIntosh, 117 AD3d 1285, 1285 n [2014]).

that she applied to him. The evidence established that these unfounded reports caused the children to be removed from their classrooms in school in order to be interviewed regarding the allegations. The investigation particularly caused stress for the daughter, who indicated that she was upset for being singled out and because of the inaccuracy of the CPS reports.

Further evidence established that the mother had cancelled visitation with the children on short notice and sometimes for inadequate reasons. In addition, the mother engaged in inappropriate conversation in front of the children during visitation, including sharing her theories that respondent Cortland County Department of Social Services (hereinafter DSS) was corrupt and that it would soon remove the stepmother's biological children from the stepmother's care. Further evidence showed that, while the mother visited with the children, she had made numerous derogatory remarks in front of them regarding the father and the stepmother. On some occasions, the children refused to go to the visits with the mother. Notably, in terms of the effect that such turmoil had on the children, the daughter overturned and destroyed items in her bedroom on the day before the commencement of the fact-finding hearing and, on the day of that hearing, the son was kicked out of school after instigating a fight.

Regarding the mother's fitness as a parent, the evidence established that the mother had been diagnosed with major depressive disorder, panic disorder without agoraphobia, posttraumatic stress disorder and borderline personality disorder. Although there was evidence introduced that the mother had made certain progress in therapy regarding these mental health issues, other evidence established that she continued to evince an unwillingness to accept her prior neglect of the children. For example, the mother admitted that she had recently signed a petition on a social media website requesting the Governor to have local DSS employees arrested, declaring in her comment, along with such signature, that DSS had stolen her children.

Although the mother disputed some of the aforementioned evidence, Family Court found the mother's testimony as to such

denials to be incredible.  Otherwise, the evidence supports Family Court's conclusion that, due to the mother's mental health issues and her potentially related hostility toward relevant child welfare authorities, the father and the stepmother, supervised visitation was unlikely to succeed in mitigating or eliminating the mother's infliction of emotional and psychological harm upon the children.  Further, despite the lack of any other evidence that reasonably supports the mother's contention, she openly maintained the position that, among other things, the father had sexually abused the daughter and that both he and the stepmother had used homophobic and racist slurs to refer to the son.  Considering this evidence, and granting appropriate deference to Family Court's credibility assessment, there is a sound and substantial basis in the record for Family Court's determination that there was a change in circumstance that warranted suspending the mother's visitation because such visitation would be harmful to the children and, therefore, not in their best interests (see Matter of Ildefonso v Brooker, 94 AD3d 1344, 1345 [2012]; Matter of Jones v McMore, 37 AD3d 1031, 1032 [2007]).

Further, we are not persuaded that consideration of the mother's violation petition regarding the 2012 order merits any different result.  "'[T]he mother was required to show that the father's [and/or the stepmother's] actions or failure to act defeated, impaired, impeded or prejudiced a right of the mother and that [such] alleged violation[s] [were] willful'" (Matter of Cobane v Cobane, 119 AD3d 995, 996 [2014], quoting Matter of Constantine v Hopkins, 101 AD3d 1190, 1191 [2012]).  Although the evidence bore out the mother's factual allegation that the children had been unsuccessfully discharged from counseling, the stepmother explained that such discharge was the result of a change in the children's health insurance coverage and that, as a result, she and the father could no longer financially afford to provide such counseling.  Family Court explicitly credited the stepmother's account and concluded that the discharge from counseling was not willful.  Giving deference to that credibility determination, Supreme Court did not err in its dismissal of the mother's violation petition (see Matter of Cobane v Cobane, 119 AD3d at 996).

Finally, the mother's contention that Family Court's bias permeated the proceedings, depriving her of due process, is unpreserved given that she did not object on these grounds or move for Family Court's recusal (see Matter of Bowe v Bowe, 124 AD3d 645, 646 [2015]; Matter of Kimberly Z. [Jason Z.], 88 AD3d 1181, 1184 [2011]).  The mother's remaining contentions are unpreserved and/or without merit.

Lahtinen, J.P., Garry and Rose, JJ., concur.

ORDERED that the appeal from the decision entered January 6, 2014 is dismissed, without costs.

ORDERED that the order entered March 21, 2014 is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court