Matter of Esther J. v Christopher K.

2026 NY Slip Op 02176

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Esther J., Respondent,

v

Christopher K., Appellant. (Proceeding No. 1.)

In the Matter of Christopher K., Appellant,

v

Esther J., Respondent. (Proceeding No. 2.)

Decided and Entered:April 9, 2026

CV-24-1070

Calendar Date: February 17, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mackey, JJ.

Edward W. Goehler, Cortland, for appellant.

Sandra M. Colatosti, Albany, for respondent.

Christine E. Nicolella, Delanson, attorney for the child.

[*1]

Fisher, J.

Appeal from an order of the Family Court of Chenango County (Frank Revoir Jr., J.), entered April 25, 2024, which, among other things, partially dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

Esther J. (hereinafter the mother) and Christopher K. (hereinafter the father) are the parents of the subject child (born in 2015). Pursuant to a pair of custody orders entered on consent, the parties shared joint legal and physical custody of the child with a biweekly rotating schedule and certain holiday time.FN1 In June 2023, the mother filed a modification petition seeking primary physical custody of the child with certain parenting time for the father, as well as final decision-making authority over medical decisions and extracurricular activities. The father answered the mother's petition and cross-petitioned for modification of the prior custody orders, also requesting primary physical custody of the child with certain parenting time for the mother. While the petitions were pending, Family Court issued a temporary order modifying the parenting schedule from a biweekly basis to weekly exchanges. Following a fact-finding hearing and a Lincoln hearing, Family Court issued an order continuing joint physical custody on the weekly parenting schedule and holiday schedule. Such order also continued the joint legal custody arrangement, but, among other things, awarded the father sole decision-making authority to enroll the child in certain school and extracurricular activities or events, and awarded the mother sole decision-making authority to schedule the child's routine medical care appointments. The father appeals.

Initially, neither parent disputes Family Court's finding of a change in circumstances,FN2 and our review of the record confirms a breakdown in communication impacting the child's medical needs and social relationships (see Matter of Sheena PP. v Edward QQ., 238 AD3d 1417, 1418 [3d Dept 2025]; Matter of Patricia Y. v Justin X., 219 AD3d 1586, 1587 [3d Dept 2023]). Accordingly, our review focuses on whether Family Court's determination served the best interests of the child. "In determining the best interests of the child, courts must consider, among other factors, the quality of the parents' respective home environments, each parent's past performance and ability to provide for the child's physical, mental, emotional and intellectual needs and the willingness of each parent to foster a positive relationship between the child and the other parent" (Matter of Michael YY. v Teresa ZZ., 242 AD3d 1343, 1344-1345 [3d Dept 2025] [internal quotation marks and citations omitted]). It is well understood that the best interests of a child generally lie with a healthy and meaningful relationship with both parents, and "[t]he fact that there are some disagreements will not necessarily render joint custody improper where the parents' relationship is not so acrimonious [*2]as to render . . . joint custody . . . unworkable" (Matter of Joseph L. v Heather K., 214 AD3d 1041, 1043 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of Michelle EE. v John EE. 235 AD3d 1121, 1124 [3d Dept 2025]; Matter of Steven OO. v Amber PP.,227 AD3d 1154, 1156 [3d Dept 2024]). "Given the superior position of Family Court to observe and evaluate the witnesses' testimony, its factual findings and credibility assessments are to be accorded great deference, and we will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Brooke PP. v Joshua QQ., 240 AD3d 1047, 1049 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1233 [3d Dept 2023]).

At the fact-finding hearing, the mother testified that the father was reluctant to medicate the child despite a prescription for medication to treat the child's newly diagnosed attention-deficit/hyperactivity disorder (hereinafter ADHD). She enrolled the child in extracurricular activities to provide structure and routine in the child's schedule as part of a strategy that she felt was best for treating the child's ADHD. The mother maintained that she notified the father of these activities before enrolling the child in them, however she admitted on cross-examination that at times the notice was as short as a couple of hours before the scheduled start of the activity. She further admitted to registering the child for activities without consulting the father when he did not respond to her attempts to communicate. For his part, the father admitted to not responding to some of the mother's communications and that the child had sometimes missed activities when in his care. He expressed concern that the mother's enrolling the child in activities every day of the week was causing the child undue stress and interfering with his parenting time. He further testified that he was hesitant to medicate the child without a prescription, but that once the child was prescribed medication, he followed the physician's guidance in administering it to the child. The father expressed a desire for the child to have down time when he could engage the child in activities in the home — rather than a scheduled activity nearly every day. He also testified that there had been seven Child Protective Services reports made against him or his family, none of which had been indicated; although the mother admitted to making one of those reports, the record does not reveal who made the remaining ones. Both parents recounted instances of breakdowns in communication via text and apps used to manage the child's educational and medical needs and further testified that they were unable to coparent with the other. Although not dispositive to our determination, we note that the appellate attorney for the child aligns with the father on appeal (see Matter of Joseph E. v Crystal G., 233 [*3]AD3d 1285, 1286 n 3 [3d Dept 2024]).

Based on the foregoing, and having reviewed the Lincoln hearing testimony, we decline to disturb Family Court's determination. Although communication between the parties is clearly strained, the record reveals that they have been able to abide by the weekly custody exchanges since Family Court's initial temporary modification and have successfully communicated regarding administering the child's medication. By awarding the father sole decision-making authority over determinations involving the child's school and extracurricular activities, Family Court ameliorated his chief concern that the mother had overenrolled the child to the child's detriment — a point that had generated friction between the parties, including in public and in front of the child. But while we agree with the parties that the breakdown in communication was sufficient to constitute a change in circumstances and trigger a best interests analysis, we cannot say that the breakdown was to such a degree as to make joint physical custody unworkable (see Matter of Christie BB. v Isaiah CC., 194 AD3d 1130, 1133 [3d Dept 2021]). We are therefore satisfied that Family Court's order continuing joint physical custody has a sound and substantial basis in the record (see Matter of Sheena PP. v Edward QQ., 238 AD3d at 1420; Matter of Joseph E. v Crystal G., 233 AD3d at 1286; Matter of Paluba v Paluba, 152 AD3d 887, 889 [3d Dept 2017]; Matter of Bailey v Blair, 127 AD3d 1274, 1277 [3d Dept 2015]).

Lastly, as correctly highlighted by the appellate attorney for the child, we remind Family Court of its "paramount obligation" to protect a child's confidentiality in the context of a Lincoln hearing (Matter of Jeffrey SS. v Myah TT., 243 AD3d 1156, 1158 [3d Dept 2025] [internal quotation marks and citations omitted]). Although Family Court accurately described the hearing as private and its contents not to be divulged to the parents or anyone else, the court nonetheless impermissibly referenced the child's preferences expressed during the Lincoln hearing in its written order. While Family Court may consider information shared by a child in a Lincoln hearing, "such considerations must remain silent to ensure that the child's right to confidentiality is protected" (Matter of C.M. v Z.N., 230 AD3d 1409, 1413 [3d Dept 2024] [internal quotation marks, emphasis and citation omitted]). The parties' remaining contentions, to the extent not already addressed, have been considered and found to be either rendered academic or without merit.

Aarons, J.P., Pritzker, Reynolds Fitzgerald and Mackey, JJ., concur.

ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The first custody order was stipulated to by the parties in August 2020 and the second was in December 2022.

Footnote 2: Although the order is somewhat contradictory, Family Court ultimately determined that there was a change in circumstances.