Matter of Siara Q. v Thomas R.

2026 NY Slip Op 03043

May 14, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Siara Q., Respondent,

v

Thomas R., Appellant. (And Another Related Proceeding.)

Decided and Entered:May 14, 2026

CV-25-0912

Calendar Date: March 26, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mcshan, JJ.

Constantina Hart, Kauneonga Lake, for appellant.

Lindsay H. Kaplan, Kingston, for respondent.

Ivy M. Schildkraut, Rock Hill, attorney for the child.

[*1]

Aarons, J.P.

Appeal from an order of the Family Court of Ulster County (Sarah Rakov, J.), entered May 6, 2025, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2022). An order of custody entered in June 2024 awarded joint legal custody of the child to the parties, primary physical custody to the mother and parenting time to the father. The June 2024 order also granted the mother final decision-making authority with respect to whether the child should undergo a specific elective surgery about which the parties did not agree. Both parties thereafter sought to modify the June 2024 order on various grounds. As relevant here, in September 2024 and January 2025, the mother commenced these two modification proceedings alleging the father was unwilling to coparent the child and filed numerous unfounded reports with Child Protective Services (hereinafter CPS). Following a fact-finding hearing at which the father appeared through counsel and only the mother testified and was subject to cross-examination by the attorney for the child (hereinafter AFC) and the father's counsel, Family Court, ruling from the bench, found the mother credible and that her testimony demonstrated a change in circumstances from the June 2024 order, and so awarded the mother sole legal custody and final decision-making authority in all medical issues. The court's oral ruling was reduced to an order entered in May 2025, from which order the father appeals.FN1

"In any modification proceeding, the threshold issue is whether there has been a change in circumstances since the prior custody order significant enough to warrant a review of the issue of custody to ensure the continued best interests of the child[ ]" (Matter of Patricia P. v Dana Q., 106 AD3d 1386, 1386-1387 [3d Dept 2013] [citations omitted]; accord Matter of Christine X. v James Y., 244 AD3d 1545, 1546 [3d Dept 2025]). "A party seeking to modify a prior order of custody must show that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order" (Matter of Kelly AA. v Christopher AA., 240 AD3d 1011, 1013 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 44 NY3d 910 [2026]; see Matter of Michael DD. v Jamie EE., 243 AD3d 1149, 1150 [3d Dept 2025]). "This Court accords great deference to Family Court's factual findings and credibility determinations, and will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Barrett LL. v Melissa MM., 224 AD3d 942, 943 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 905 [2024]; see Matter of Jessica HH. v Sean HH., 196 AD3d 750, 753 [3d Dept 2021]).

In view of that deference[*2],FN2 the record supports Family Court's determination that the father's unfounded reports to CPS, which began after entry of the June 2024 order, constitutes a change in circumstances (see Matter of Patrick EE. v Brenda DD., 129 AD3d 1235, 1237-1238 [3d Dept 2015], lv denied 26 NY3d 908 [2015]). The mother's testimony revealed that one of the reports alleged suspected abuse stemming from a "black eye" observed on the child when the father's fiancÉe picked up the child for the father's parenting time. Though the mother explained that the injury was the result of an accident on the child's part, the father sought medical attention at an emergency room without informing the mother as the June 2024 order required. According to the mother, the father also falsely reported that she was overdosing the child with Tylenol after his surgery. In this connection, the father's unfounded reports could be construed as an attempt to interfere with the mother's custody of the child (cf. Matter of Jessica AA. v Thomas BB., 151 AD3d 1231, 1232 [3d Dept 2017]; Matter of Crystal F. v Ian G., 145 AD3d 1379, 1381-1382 [3d Dept 2016]), and his failure to inform the mother about the child's emergency room visit reflects a breakdown in communication since the prior order impacting the child's medical needs (see Matter of Esther J. v Christopher K., ___ AD3d ___, ___, 2026 NY Slip Op 02176, *1 [3d Dept 2026]).

Next, "Family Court accordingly proceeded to conduct a best interests analysis, which involves the consideration of factors such as the past performance and relative fitness of the parents, their willingness to foster a positive relationship between the child and the other parent, their fidelity to prior court orders and their ability to both provide a stable home environment and further the child's overall well-being" (Matter of Carrie ZZ. v Aaron YY., 178 AD3d 1291, 1292 [3d Dept 2019] [citations omitted]; see Matter of Michelle EE. v John EE., 235 AD3d 1121, 1123 [3d Dept 2025]). As an initial matter, the mother's testimony established that the father advocated to reduce the child's dose of Tylenol after his elective surgery, over the recommendation of the child's physician and against the wishes of the mother — whom he alleged had been overdosing the child's medication. The record thus supports the court's determination to grant the mother final decision-making authority as to the child's medical care (see Matter of Esther J. v Christopher K., ___ AD3d at ___, 2026 NY Slip Op 02176, *2).

Turning to Family Court's determination granting the mother's application for sole legal custody of the child, we are guided by the principle that "some disagreements will not necessarily render joint custody improper where the parents' relationship is not so acrimonious as to render the joint custody award unworkable" (Matter of Joseph L. v Heather K., 214 AD3d 1041, 1043 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; accord Matter of Esther J. v Christopher [*3]K., ___ AD3d at ___, 2026 NY Slip Op 02176, *2). Though the mother credibly testified that the father's CPS reports were unfounded, we disagree with the AFC on appeal and the mother that this conduct justified the court's custody determination.FN3 The underlying circumstances and disruption caused by the ensuing investigations — to the extent the mother detailed those things — are not, without more, enough to call the father's parental fitness into doubt (compare Matter of Williams v Rolf, 144 AD3d 1409, 1413-1414 [3d Dept 2016]; Matter of Patrick EE. v Brenda DD., 129 AD3d at 1236-1238; Matter of Greene v Robarge, 104 AD3d 1073, 1076 [3d Dept 2013]). In that regard, the mother also testified that the father began withholding consent for the child to obtain a passport despite his earlier agreement, articulating a new concern that the mother would take the child out of the country without notice. According to the mother, the father had also recently started to express resistance to the child learning Spanish because he did not wish the child to speak a language that he did not speak. Yet, the mother also testified that they were able to communicate productively about most other things using a notebook or the Talking Parents application, and that they agreed on important issues such as the child's religion and education. As such, the evidence did not suggest that the parties had become "unable to effectively and directly communicate with one another to care for the child's needs" generally (Matter of C.M. v Z.N., 230 AD3d 1409, 1411 [3d Dept 2024] [internal quotation marks and citations omitted]), but instead that they had reached an impasse on specific issues addressable through tailored relief (see e.g. Matter of Esther J. v Christopher K., ___ AD3d at ___, 2026 NY Slip Op 02176, *1; Matter of Carlo A. v Pamela B., 242 AD3d 1331, 1332 n 1 [3d Dept 2025], lv denied ___ NY3d ___ [Apr. 16, 2026]; Matter of Janaye D. v Zachary C., 240 AD3d 961, 964 [3d Dept 2025], lv denied 44 NY3d 910 [2026]).FN4 We therefore conclude that the record does not provide a sound and substantial basis for the court's determination that the child's best interests lie in awarding sole legal custody of the child to the mother (see Matter of Christie BB. v Isaiah CC., 194 AD3d 1130, 1133 [3d Dept 2021]; compare Matter of Sheena PP. v Edward QQ., 238 AD3d 1417, 1420 [3d Dept 2025]).

Pritzker, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as awarded sole legal custody of the child to the mother; applications denied to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1

Although not addressed by the parties, we note that Family Court articulated that it was proceeding to "inquest" on the issue of the mother's sole legal custody based upon the father's failure to appear. The court did not, however, expressly find the father in default, the appealed-from order is not denominated as one entered on default, and, in any event, the record shows that the father's counsel diligently participated on his behalf (see Matter of Winter II. [Kerriann II.], 227 AD3d 1142, 1144 [3d Dept 2024], lv denied 42 NY3d 903 [2024]). Thus, the father's appeal is properly before us (compare Matter of Corey MM. [Cassandra LL.], 177 AD3d 1119, 1120-1121 [3d Dept 2019]).

Footnote 2

Aside from allegations in one of the petitions, the mother's testimony was the only evidence related to the father's CPS reports.

Footnote 3

The child was represented by a different AFC before Family Court.

Footnote 4

When the AFC asked the mother whether she was "really" seeking sole legal custody, the mother responded that she "would like to obtain the passport and to be able to move on to medical matters without having to delay [the child's] treatment." Though not dispositive of our determination, we note that the AFC before Family Court did not argue that granting sole legal custody to the mother was in the child's best interests, but instead advocated for an order targeting the parties' specific areas of disagreement.