Matter of Andrew O. v Jessica P.
2026 NY Slip Op 03489
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Andrew O., Appellant,
v
Jessica P., Respondent. (And Three Other Related Proceedings.)

Decided and Entered:June 4, 2026
CV-25-0086
Calendar Date: April 30, 2026
Before: Pritzker, J.P., Ceresia, Fisher, Mcshan And Corcoran, JJ.

Lawrence E. Becker, Albany, for appellant.
Carolyn Snyder Lemmon, Albany, for respondent.
Paige E. Crable, Albany, attorney for the child.

[*1]
Corcoran, J.
Appeal from an order of the Family Court of Albany County (Amy Joyce, J.), entered November 13, 2024, which, among other things, partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2013). The parties shared joint legal custody pursuant to a 2018 order entered on consent, affording the mother primary physical custody and the father parenting time on alternating weekends and specified weekday evenings. In 2021, the father filed petitions seeking, among other things, additional parenting time and custody modifications related to the child's education and medical care. The mother filed a cross-petition seeking, among other things, final decision-making authority. Following a combined fact-finding hearing on all petitions, Family Court modified the 2018 consent order to provide that, if the parties cannot agree on a major decision affecting the child after discussion, appointment or assessment, the mother shall have final decision-making authority. Family Court granted the father additional parenting time on Father's Day but did not otherwise expand his parenting time. The father appeals.
The father contends that Family Court erred when it modified the existing custody order to grant the mother final decision-making authority if the parties could not reach an agreement. We disagree. As the parties do not dispute that there was a change in circumstances, the issue distills to whether modification of the existing custodial arrangement was in the child's best interests (see Matter of Sherab X. v Michelle Y., 244 AD3d 1532, 1533 [3d Dept 2025]; Matter of Mark JJ. v Stephanie JJ., 240 AD3d 1025, 1026 [3d Dept 2025]). "In making a best interests determination, Family Court must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Brooke PP. v Joshua QQ., 240 AD3d 1047, 1048-1049 [3d Dept 2025] [internal quotation marks and citations omitted]). "Family Court's credibility determinations are entitled to deference by this Court and we will not disturb its best interests determination if supported by a sound and substantial basis in the record" (Matter of Christine EE. v David FF., 235 AD3d 1156, 1158 [3d Dept 2025] [citations omitted]). "Joint legal custody is preferred and should be ordered if the parents are able to communicate and make decisions cooperatively" (Leah R. v Taylor R., 244 AD3d 1425, 1426 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]). "[T]he fact that [*2]there are some disagreements will not necessarily render joint custody improper where the parents' relationship is not so acrimonious as to render joint custody unworkable" (Matter of Esther J. v Christopher K., __ AD3d ___, ___, 2026 NY Slip Op 02176, *1-2 [3d Dept 2026] [internal quotation marks, ellipses and citations omitted]).
Although both parents clearly love the child and seek to provide for his needs, our review of the record confirms that they have struggled to reach consensus about the child's education and medical care. With respect to education, the child was initially homeschooled during the COVID-19 pandemic by agreement of the parties. For the 2021-2022 school year, the parties agreed to enroll the child in public school, with the understanding that homeschooling could resume if necessary. Midway through that school year, in or about January 2022, the parties agreed that the child would resume homeschooling due to pandemic-related concerns. However, the father testified that his approval of homeschooling was conditioned upon an anticipated mutual agreement to the child's educational plan, and he expressed ongoing concerns about the child's academic progress, socialization and his own lack of input in developing the child's curriculum. He claimed that he was not consulted about religious instruction and that he did not consistently receive information regarding the child's schoolwork and progress. Ultimately, he believed the child would be better served in public school. The mother testified that she developed a curriculum approved by the school district, and that she provided progress reports and educational materials to the father; she thought that the child benefited academically and socially from homeschooling.
As to the child's medical care, especially his food allergy, the father testified that lab results indicated the child had a mild allergy to dairy and eggs, but that he did not observe any adverse reaction when the child consumed those foods, leading him to question the diagnosis. He sought to have the child evaluated by an allergist but claimed that the mother would not allow it during her parenting time. The father admitted that he continued to provide the child with dairy and eggs despite recommendations to avoid those foods from the child's pediatrician and an ear, nose and throat specialist. The mother, for her part, testified that she observed improvements in the child's health after eliminating dairy from his diet and that she has followed medical advice in that regard. She testified that she notified the father about the child's medical appointments, but that he did not consistently reciprocate.
The record belies the father's contention that the parties are capable of jointly deciding these matters. The parties disagree about core aspects of the child's upbringing, as demonstrated by the parties' text messages reflecting unilateral decision-making and an inability to reach consensus. Notably, Family Court's order [*3]does not exclude the father from the decision-making process. Rather, it preserves his ability to access information and expressly permits him to take "whatever steps are necessary to inform his opinion regarding the child's educational and medical needs." The mother's authority is limited to circumstances in which the parties are unable to reach agreement following a discussion, appointment or assessment. Accordingly, on this record, we find that Family Court's determination to grant the mother final decision-making authority in the event of an impasse is supported by a sound and substantial basis (see Matter of Alexander I. v Allison I., 246 AD3d 1230, 1232 [3d Dept 2026]; Matter of Janaye D. v Zachary C., 240 AD3d 961, 963-964 [3d Dept 2025], lv denied 44 NY3d 910 [2026]; Theodore P. v Debra P., 209 AD3d 1146, 1150 [3d Dept 2022]).FN1
Contrary to the father's contention, Family Court did not err in failing to conduct a Lincoln hearing. Although a Lincoln hearing is the preferred method to ascertain a child's wishes, the father did not request one, nor is such a hearing "mandatory" (Matter of Derek KK. v Jennifer KK., 196 AD3d 765, 768 [3d Dept 2021] [internal quotation marks and citation omitted]). Moreover, while information obtained from a child during a Lincoln hearing "may serve to corroborate other evidence adduced at a fact-finding hearing" (Matter of Kalam EE. v Amber EE., 244 AD3d 1523, 1525 [3d Dept 2025] [internal quotation marks, emphasis and citations omitted]), the issues before Family Court turned primarily on the parties' inability to cooperate, as demonstrated through their private communications; the father has not identified any specific testimony or factual dispute that would have been clarified or corroborated by the child's participation (compare Matter of Edwin Z. v Courtney AA., 187 AD3d 1352, 1354 [3d Dept 2020]). Under these circumstances, Family Court did not abuse its discretion in declining to conduct such a hearing.
However, we are persuaded by the father's contention that Family Court erred in declining to expand his parenting time. "Parenting time with a noncustodial parent is presumed to be in a child's best interests. Thus, unless parenting time with the noncustodial parent would be detrimental to the child's welfare, Family Court is required to fashion a parenting time schedule that affords the noncustodial parent frequent and regular access to the child" (Matter of Alexander I. v Allison I., 246 AD3d at 1231 [internal quotation marks and citations omitted]). The father testified that he desired additional parenting time and confirmed that he could return the child back to the mother's house in time for homeschool if granted additional overnights. Notably, neither the prior order nor the order on appeal addresses parenting time during the summer months. However, the record contains limited information regarding the father's work schedule, his availability during the school day or his ability to accommodate the [*4]child's educational needs in a homeschool setting. In addition, at the time of the hearing, the father resided with the paternal grandfather in a two-bedroom home, and the record does not clearly establish the sleeping arrangements available for the child in the event of additional overnights. Under these circumstances, Family Court erred in declining to modify the father's parenting time without further developing the record. Although we are empowered to independently decide parenting time issues, given the limited testimony concerning the father's availability, coupled with the passage of time since the prior order, remittal to Family Court is warranted to develop an appropriate parenting time schedule that affords the father meaningful and frequent access, while taking into account the child's extracurricular schedule and the father's current living arrangements (see id. at 1233; Matter of Theressa M. v Gaddiel M., 228 AD3d 1040, 1041 [3d Dept 2024]; Matter of Jill Q. v James R., 185 AD3d 1106, 1110 [3d Dept 2020]).
Pritzker, J.P., Ceresia, Fisher and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as declined to modify the father's parenting time; matter remitted to the Family Court of Albany County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1
Although not dispositive, this conclusion is consistent with the position advanced by the attorney for the child (see Matter of Esther J. v Christopher K., ___ AD3d at ___, 2026 NY Slip Op 02176, *2; Matter of Debra YY. v Michael XX., 234 AD3d 1021, 1025 [3d Dept 2025]).