Matter of Alyssa P. v Jeffrey P.
2026 NY Slip Op 04017
June 25, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Alyssa P., Appellant,
v
Jeffrey P., Respondent.

Decided and Entered:June 25, 2026
CV-25-0430
Calendar Date: April 23, 2026
Before: Clark, J.P., Aarons, Pritzker, Mcshan And Ryba, JJ.

The Powers Firm, PLLC, Albany (Elise C. Powers of counsel), for appellant.
Whiteman Osterman & Hanna LLP, Albany (Robert S. Rosborough IV of counsel), for respondent.
Veronica Reed, Schenectady, attorney for the children.

[*1]
Aarons, J.
Appeal from an order of the Family Court of Saratoga County (Michael Hartnett, J.), entered December 5, 2024, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the divorced parents of two children (born in 2009 and 2012). The parties' 2016 judgment of divorce incorporated, but did not merge, a separation agreement providing for joint legal and shared physical custody of the children on an equal-time basis. That agreement was modified by addenda executed by the parties between 2016 and 2019. In 2020, Family Court (Pelagalli, J.) issued an order modifying only the location of custody exchange and directed that the parenting schedule set forth in the 2016 addendum otherwise "remain in place." The court also issued an order in 2021 dismissing the father's emergency petition for temporary custody of one of the children to compel her to be tested for attention deficit disorder or attention deficit hyperactivity disorder (hereinafter ADD/ADHD); the court made no modification to custody at that time.
In March 2023, the mother commenced this modification proceeding seeking sole legal and primary physical custody of the children. The father filed his own petition the same day, which he withdrew at the outset of the nine-day hearing in December 2023. Family Court (Hartnett, J.), following a Lincoln hearing, ultimately found no change in circumstances since the December 2020 order warranting a modification of custody in the children's best interests. The court thus dismissed the mother's petition and awarded the father $4,000 in counsel fees. The mother appeals.
The mother, "as the parent seeking modification of a prior custody order, bore the initial burden of demonstrating that a change in circumstances ha[d] occurred since the entry thereof to warrant the court undertaking a best interests analysis" (Matter of Alexander Y. v Jennifer Z., 233 AD3d 1402, 1403 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Ricky SS. v Christine SS., 241 AD3d 1009, 1011 [3d Dept 2025]; Matter of Shayne FF. v Julie GG., 221 AD3d 1202, 1203 [3d Dept 2023]). If that burden is met, the analysis turns to determining whether a change in custody would be in the children's best interests by considering "a variety of factors including the quality of the home environment of each parent, the need for stability in the children's lives, the past performance of the parents and their ability to provide for the children, the wishes of the children and the degree to which each parent is willing to foster a positive relationship between the children and the other parent" (Matter of Omar UU. v Courteney UU., 247 AD3d 1333, 1334 [3d Dept 2026] [internal quotation marks and citations omitted]; see Matter of Natalie F. v Nicholas G., 246 AD3d 1275, 1277 [3d Dept 2026]). "Family Court's [*2]credibility determinations are entitled to deference by this Court and [it] will not disturb [Family Court's] best interests determination if supported by a sound and substantial basis in the record" (Matter of Christine EE. v David FF., 235 AD3d 1156, 1158 [3d Dept 2025] [citations omitted]).
As an initial matter, Family Court abused its discretion in sustaining the father's numerous objections to evidence predating the December 2020 order. Under the circumstances of this case, we agree with the mother that the operative prior order of custody was the 2016 addendum to the separation agreement (see Matter of Smith v O'Donnell, 107 AD3d 1311, 1312 [3d Dept 2013]; Matter of McGovern v McGovern, 58 AD3d 911, 913 [3d Dept 2009]). Further, the mother was not judicially estopped from asserting in this proceeding that the 2016 addendum was the operative prior order of custody. Although in a prior proceeding the mother asserted that the December 2020 order was the operative prior custody order, there is no indication that Family Court (Pelagalli, J.) endorsed that position when, in 2021, it dismissed the father's above-mentioned temporary custody petition (compare Matter of Joseph v Granderson, 226 AD3d 778, 780 [2d Dept 2024]; Northacker v County of Ulster, 212 AD3d 86, 91 [3d Dept 2022]; 12 New St., LLC v National Wine & Spirits, Inc., 196 AD3d 883, 885 [3d Dept 2021]).
Even if we agreed that the December 2020 order was the operative prior order of custody, the record does not support the conclusion by Family Court (Hartnett, J.) that there was no change in circumstances warranting a best interests analysis. The mother testified that the parties' previously cooperative communication deteriorated significantly through the post-2020 period, and the avalanche of emails and text messages received into evidence show repeated conflict concerning medical care, parenting time, activities and basic communication, including the father's unilateral imposition of "boundaries," cessation of texting, refusal to accommodate reasonable scheduling requests, and accusatory or demeaning commentary. That degradation in communication is significant because it coincides with, among other things, an increase in the children's extracurricular commitments requiring greater flexibility and collaboration between the parties. Thus, the cumulative record reflects a genuine breakdown in communication affecting the children that is sufficient to constitute a change in circumstances warranting a best interests analysis (see Matter of Luis UU. v Edith VV., 242 AD3d 1413, 1413-1414 [3d Dept 2025]; Matter of Rohr v Young, 148 AD3d 1681, 1681 [4th Dept 2017]).
Although we do not adopt Family Court's conclusion with respect to the change-in-circumstances issue, the reasoning contained in its order is functionally similar to a best interests review. Furthermore, our factual review power is as broad as that of Family Court and, because there was a full fact-finding hearing in this case, this [*3]Court can determine what custody arrangement would be in the children's best interests (see Matter of Andrea II. v Joseph HH., 203 AD3d 1356, 1357 [3d Dept 2022]; Matter of Anthony F. v Kayla E., 191 AD3d 1108, 1110-1111 [3d Dept 2021], lv denied 37 NY3d 901 [2021]). In our view, the court appropriately determined that, despite the acrimony between the parties, the children are doing exceptionally well in school and extracurriculars, receiving recognition in both arenas. Further, both parties are able to provide stable, nurturing homes; both are deeply involved in the children's academic and extracurricular activities; and both foster the children's relationships with the other parent. We therefore decline to disturb the parties' shared physical custody arrangement (see Matter of Kelly AA. v Christopher AA., 240 AD3d 1011, 1014 [3d Dept 2025], lv denied 44 NY3d 910 [2026]; Matter of Michelle EE. v John EE., 235 AD3d 1121, 1124 [3d Dept 2025]).
Furthermore, the record does not reveal that the parties' relationship has deteriorated to such a degree that joint legal custody is unsustainable (see Matter of Alexander I. v Allison I., 246 AD3d 1230, 1232 [3d Dept 2026]; Matter of Brian Q. v Allysa R., 244 AD3d 1328, 1330 [3d Dept 2025]). Nevertheless, we cannot ignore evidence of recurring impasses and unilateral actions demonstrating that the joint-decision structure has become strained. In particular, evidence suggesting that the father discontinued the younger child's therapy sessions and was willing to prevent her from attending gymnastics based solely on the mother's presence, along with proof of his unilateral act in purchasing the older child a cell phone, among other matters, show difficulty in collaborative decision-making. The mother's communications, by contrast, reflect a greater willingness to collaborate or compromise in decisions concerning the children.FN1 For example, the mother initiated a conversation with the father about purchasing a cell phone for the younger child for her birthday, which he refused to discuss outside of "a therapeutic setting where [they could] come to a full agreement on all the details" but then proceeded to purchase a phone for the younger child without any further discussion. In light of this evidence, we conclude that the children's best interests are served by retaining the joint legal custody arrangement while granting the mother final decision-making authority in all parental disagreements (see Matter of Janaye D. v Zachary C., 240 AD3d 961, 964 [3d Dept 2025], lv denied 44 NY3d 910 [2026]; Matter of Michael T. v Dana U., 232 AD3d 1058, 1063 [3d Dept 2024]).
We disagree with the dissent's characterization of our decision as having the practical effect of granting the mother sole legal custody, handing her a veto in contested decisions. That view reduces joint custody to a parental power-sharing agreement, and, from there, assumes the mother will steamroll the father. We decline to treat that worst-case scenario [*4]as inevitable. In any event, we do not grant the mother sole or primary decision-making authority in general or with respect to any particular sphere of responsibility (see e.g. Matter of Mathena XX. v Brandon YY., 189 AD3d 1733, 1738 [3d Dept 2020]; Matter of Corydon YY. v Laura ZZ., 177 AD3d 1116, 1116 [3d Dept 2019]). Rather, the parties' custody arrangement still requires them to act cooperatively and communicate productively in connection with all coparenting decisions, and we modify that arrangement only to permit the mother to resolve disputes over those decisions after both parties have engaged in good-faith, reasonable efforts to reach a joint decision and those efforts have failed (see Matter of Andrew O. v Jessica P., ___ AD3d ___, ___, 2026 NY Slip Op 03489, *3 [3d Dept 2026]; Matter of Alexander I. v Allison I., 246 AD3d at 1232; Matter of Douglas CC. v Musique DD., 243 AD3d 1180, 1181 [3d Dept 2025]).
Finally, Family Court abused its discretion in awarding the father $4,000 in counsel fees. The court based the award solely on its view that the mother "obstreperously" argued that the 2016 addendum was the operative prior order. Yet, the court granted the mother leave to reargue and to submit written memoranda, and the evidentiary dispute was precipitated in part by the father's withdrawal of his own modification petition — containing pre-2020 allegations — on the eve of the hearing, followed by his objection to the very evidence he had relied upon. The record does not reflect that the court meaningfully considered the statutory presumption favoring the less-monied parent or the parties' relative financial circumstances (see Domestic Relations Law § 237 [b]). The parties' incomes are closely comparable, and the nature of the litigation does not warrant fee-shifting under the circumstances. As such, the award of counsel fees to the father cannot stand, and Family Court properly denied the mother's own application for counsel fees (see Matter of Debra YY. v Michael XX., 234 AD3d 1021, 1026 [3d Dept 2025]; Matter of Jacob L. v Heather L., 228 AD3d 1191, 1194-1195 [3d Dept 2024]).
McShan and Ryba, JJ., concur.
Pritzker, J. (concurring in part and dissenting in part).
We concur with the majority that Family Court erred in sustaining respondent's (hereinafter the father) numerous objections to evidence predating the December 2020 order and that it was error to award the father counsel fees. Furthermore, we agree there is a change in circumstances sufficient to warrant a best interests analysis and that the record is sufficient for this Court to determine what custody arrangement would be in the best interests of the children. However, because it is our opinion that it is in the children's best interests to maintain both the shared physical and joint legal custody arrangement, we respectfully dissent.FN2
"In determining whether modification of a prior custody order will serve the best interests of the child[ren], courts must consider a [*5]variety of factors, including the quality of the parents' respective home environments, the need for stability in the child[ren's] [lives], each parent's willingness to promote a positive relationship between the child[ren] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[ren's] intellectual and emotional development and overall well-being" (Matter of Michael M. v Makiko M., 238 AD3d 1304, 1306 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Ana J. v Nasar J., 248 AD3d 1399, 1401 [3d Dept 2026]).
Considering these factors, we do not find that the record supports the majority's grant of final decision-making authority to petitioner (hereinafter the mother), which ostensibly negates joint legal custody, at least from a practical point of view. To that end, the record demonstrates that the parties have shared joint legal custody for over 10 years. There is no dispute that the children are doing exceptionally well. They are high achievers academically and in their extracurricular activities. The children have active social lives and also spend a significant amount of time with both of the parents and the parents' extended families. Both parents are very involved in the children's lives, clearly are positive influences and are supportive of the children. The parents have both remarried, and testimony established that the children have bonded with their stepparents and that they are also positive influences in the children's lives.
It is clear from the record that the biggest challenge to the parties' coparenting is poor communication, particularly regarding relatively minor issues such as transitioning the children and scheduling vacations. The record demonstrates that improvements have been made, likely due to the passage of time, as well as the parties taking coparenting classes and engaging in coparenting counseling during the trial. Although we recognize that the father, in some of his communications, was condescending, judgmental and wholly inappropriate in how he addressed the mother, it is our opinion that the proper remedy for this conduct is not to grant the mother final decision-making authority, which translates to veto authority over contested matters. In fact, doing so would detract from meaningful, though sometimes strained, consultation between these two extremely competent parents and actually discourage the mother from compromising with the father, which is contrary to the best interests of the children. Indeed, while making major decisions involves significant back and forth between the parties, the mother conceded that the parties had reached consensus on a myriad of decisions. And, as to the more minor issues, since they began coparenting counseling,FN3 both parties agreed that they had made progress toward resolving issues such as upcoming vacations.
Given the foregoing, considering the relevant best interests factors, it cannot be said that [*6]either parent is more involved than the other in the children's lives (compare Matter of Janaye D. v Zachary C., 240 AD3d 961, 963-964 [3d Dept 2025], lv denied 44 NY3d 910 [2026]), that either parent is unwilling to promote a positive relationship between the children and the other parent (compare Matter of Joshua PP. v Danielle PP., 205 AD3d 1153, 1159-1160 [3d Dept 2022], lv denied 39 NY3d 901 [2022]),FN4 or that either parent is better equipped to make major decisions, such as medical or educational decisions (compare Matter of Michael T. v Dana U., 232 AD3d 1058, 1062-1063 [3d Dept 2024]; Matter of Elizabeth B. v Scott B., 189 AD3d 1833, 1836-1837 [3d Dept 2020]).FN5 And although it is clear that the parties have a difficult coparenting relationship and regularly disagree, their communication has improved and they have, despite these challenges, very successfully coparented their children for many years such that "grant[ing] either party wholesale final decision-making authority" is not supported by the record (see Matter of Leah R. v Taylor R., 244 AD3d 1425, 1427 [3d Dept 2025]; compare Matter of Andrew O. v Jessica P., ___ AD3d ___, ___, 2026 NY Slip Op 03489, *2 [3d Dept 2026]).FN6
Finally, given the positive impact the coparenting counseling was having on the parties during the pendency of the fact-finding hearing, we believe it would be prudent to order the parties to refrain from disparaging one another and to order coparenting counseling on an ongoing basis, to ensure that they are consistently improving their communication with one another and have a forum to discuss major decisions with continued support (see Matter of Joseph XX. v Jah-Rai YY., 226 AD3d 49, 55 [3d Dept 2024], lv denied 43 NY3d 901 [2025]). In closing, the parents must recognize that they are fortunate to have such exceptional children. We challenge them to do better in their communications, joint decisions and respect for one another in the best interests of the children.
Clark, J.P., concurs.
ORDERED that the order is modified, without costs, by reversing so much thereof as dismissed petitioner's application and awarded respondent counsel fees; petition granted to the extent of awarding petitioner final decision-making authority on issues of parental disagreement after both parties have engaged in good-faith, reasonable efforts to reach a joint decision and those efforts have failed; and, as so modified, affirmed.

Footnotes

Footnote 1
As another example, when the mother resisted testing one of the children for ADD/ADHD based upon symptoms the father observed, the father sought temporary custody of the child to compel such testing, resulting in the above-mentioned 2021 court order dismissing that petition and instead just directing the parties to follow the pediatrician's recommendation. The pediatrician recommended testing, which did not result in a diagnosis of ADD/ADHD. Then, in 2022, when the parties took opposing positions on another issue concerning the children's healthcare, the mother, "under duress," acquiesced to the father's position in the face of his condescending comments and threat of litigation.

Footnote 2
We concur with the majority that the physical custody arrangement should remain unchanged.

Footnote 3
We note that it was the father who, at the beginning of the fact-finding, requested Family Court direct the parties to engage in this counseling, which the mother initially opposed.

Footnote 4
In fact, when the mother's attorney, while cross-examining the father, asked if he "believe[d] [that the mother is] a good mother," the father responded that "[he] thinks[s] she's a great mom."

Footnote 5
Typically, when one parent is granted final decision-making authority, it is not in a true shared custody situation arrangement such as we have here, but rather when the parent with final decision-making authority also has primary physical custody (see e.g. Matter of Janaye D. v Zachary C., 240 AD3d at 961; Matter of Michael T. v Dana U., 232 AD3d at 1059; Matter of Joshua PP. v Danielle PP., 205 AD3d at 1154).

Footnote 6
In the order on appeal, Family Court specifically noted that, if it had found the necessary change in circumstances, "[it] would be reluctant to adjust or disturb the current custodial arrangement as there has been no showing that a change" would be in the childrens' best interests. Moreover, the attorney for the children in Family Court similarly stated she "did not hear anything from either party[ ] that was convincing to me . . . that either party is more competent than the other or should have more say in matters th[a]n the other."